By the Court. Woodruff, J.
The policy of insurance— the representations which are declared to be the basis of the contract' of insurance, and the certificate of renewal must be construed together. This is only in accordance with the necessary *345 intent of the parties. The very term renewal, or “ renewed,” imports the continued existence of the previous contract, and necessarily refers to its provisions. If there is nothing expressed in the terms of renewal inconsistent with the pre-existing agreement, or the conditions in reference to which it is made, then clearly the act of renewal brings again into full legal effect all the terms of the previous policy, subject to the conditions upon which it was made, and to those conditions only.
To this may be added, that the design and object being to renew a pre-existing policy, the terms employed to effect that object will not be deemed inconsistent with the conditions of such policy, if they may reasonably be construed in harmony with those conditions. The nature of the transaction indicates an intent to continue the former contract without modification, unless the terms of renewal show a different purpose.
And, again, it is a reasonable presumption that the same terms employed by the parties in the original contract are used in precisely the same sense, when they appear in a certificate of the renewal of that contract.
If these observations are well founded, they are pertinent to the appeal under consideration, and would seem decisive in their application to the case. And they are especially appropriate in a case in which the whole object of the so called renewal .was to waive a default in not paying the premium on the precise day it became due, a default arising from inadvertence.
The original policy was made upon an express condition, that if the declaration of the assured made on his application for insurance, should be found in any respect untrue, such policy should be null and void.
The declaration so referred to contained the representations of the assured respecting his health, and after referring to past habits of indulgence, states that he had had no sickness other than dyspepsia, and piles, &c. That he has bleeding piles occasionally ; that he has had palpitations and nervousness, but not for .many months; and in answer to a specific question, “is the said party now in good health? answers, about as well as I ever was, except temporary cold; and it then concludes, that “I am now in good health, and do ordinarily enjoy good health;” and it is then agreed that this declaration and the accompanying pro *346 posai “ shall be the basis of the contract” between the assured and the defendants.
The certificate of renewal, which was the only evidence of the renewed undertaking which the defendants furnished to the assured, after acknowledging the receipt of the premium for the second year, contained the words, " renewed on a health certificate.’’
If no further explanation had been sought or given, it would be difficult to say,- that this language imported anything more than that the company had received a certificate, in regard to the health of the assured, which was such that they had consented to renew the policy, and did renew the policy, and waive the default in not paying the premium on the day it became due.
But the matter .did not rest there. The assured, conscious, no doubt, that no actual certificate had been furnished other than his original declaration above referred to, sought an explanation, giving the cause of the.default (imputing it to the neglect of the defendants’ agent), stating that he would give no further explanation as to his health, other than to say that he thought he was better off than when he received the policy. The explanation of the defendants, therefore, is in substantially the terms which formed part of the original declaration which was made “the basis of the contract,” viz. that the condition of renewal was that the party insured is in “ good health.”
Asan min g that by this explanation, or by the terms of the memorandum subscribed by the person who carried the check for the premium to the defendants, that good health thus became a condition of the renewal, we cannot find any ground for saying that it had any other or different meaning in the-renewal than it had when made the very “ basis of the original contract.” These words in the contract of renewal were used in reference to the same subject between the same parties, in view of the continu: anee of the same contract, which was to have the same legal effect and operation in the fixture. There appears no reason why the parties should have used or understood them in any different sense at the one time rather than at the other.
We cannot say that “ good health” has so definite a meaning that it admits of application to only one physical condition. Its ordinary use in the community does not probably import a perfect physical condition once in one hundred times. And when *347 we place ourselves in the precise condition in which the parties themselves were when the renewal was made, with the previous declaration before us, in which good health, as agreed to in the original policy, meant just such health as the original declaration of the assured described, (in very terms “ now in good health,”) we cannot hesitate to say that “ now in good health,” when made a condition of the renewal of the same policy, meant precisely the same thing.
The finding of the jury, then, that the assured was, when the policy was so renewed, in respect of health or disease, in a condition not substantially different from what it was when the policy was effected, seems to us fully to satisfy the condition of the renewal. And these views necessarily dispose of the objection to evidence on that subject, and the exception to the charge of the Judge on the trial.
The remaining "exception rests upon the alleged insufficiency of the preliminary proofs in this particular; that, before suit brought, the plaintiffs did not lay before the defendants proof that, at the time of. such renewal, the assured was in good health, &c.
Although there is room for doubt whether the memorandum signed by Wm. W. Wilson, the person who took to the company the check for the premium, had any operation upon the plaintiffs’ rights whatever, (it not appearing that he had any authority to do anything more than deliver the check,) still we do not think it necessary to rest our decision of this exception upon that ground. The fact nevertheless exists, that the defendants did not insert any condition, (that any such preliminary proof should be furnished), in the receipt they gave to the assured as his voucher for the contract into which the company then entered, and when the president in writing explained the alleged conditions of renewal, he does not intimate that the furnishing of any such preliminary proof is required. And there is nothing whatever to show that the assured, or his representatives, were ever informed of the contents, or even the existence of any such memorandum as that signed by Wilson. The assured had himself been at the defendants’ office, and the state of his health had been the subject of conversation.
Under such circumstances we greatly doubt whether the com *348 pany had' any right to require such preliminary proof. But if they had, we are quite clear, that when the preliminary proofs were furnished, if they were deemed defective in that particular, the attention of the plaintiffs should have been called to it, or the defect.must be deemed waived; and this.we should hold, even if the preliminary proofs which were furnished were altogether silent upon the subject. On this subject, fair dealing requires reasonable frankness and candor from the insurance company, and so much-the law does and ought to require. The defendants are allowed sixty days after the preliminary proofs are ftirnished, before they can be required to pay.- When, therefore, what are in good faith presented to them as preliminary proofs, are in any respect defective, common fairness requires that such defect be. suggested, and. that it be not held in reserve, to be used afterwards to obtain further delay of payment, or to defeat a suit brought for the money.
But when these preliminary proofs (viz.the affidavit of Messrs. Barstow and Blossom), are read in connection with the fact that the death was only about two months after the renewal, and that the affidavit distinctly refers to the same diseases (as the cause of his death) which are mentioned in the original declaration; (the basis of the policy), and states that he had not been considered dangerously sick more than a week: it is not too much to say, that here is a plain implication that might well be deemed by the company to satisfy their requirement.
Having themselves seen the assured after the renewal was made, in their office, and conversed with him on the subject, and being now furnished with'the affidavit of two persons, that though his disease was of the character from which he suffered even when the policy was originally effected, yet he had-not been considered dangerously ill more than a week, they, had no occasion to require any other or further evidence, that.at the time of the renewal, two months before, he was in the good health contemplated by the policy and its conditions. Although the affidavit is not specific to the point, there "was enough-in it to invite the attention of the company thereto; and if they were not satisfied, they should have suggested the objection.
Judgment must be entered for the plaintiffs upon the verdict.