By the Court—Woodruff, J.
The defendants received the papers which were submitted to them as preliminary proofs of loss and of interest, retained them for examination three or four days, and then declined paying. No intimation was given that there was any defect in these preliminary proofs. On the contrary, the witness says the President admitted the papers as •proofs of loss, but declined paying without consultation with their counsel. It is well settled that when the assured in good faith submits his preliminary proofs with a view to set the time a running (the sixty days) after which the insurance is payable, and they are received by the insurers and examined, he is entitled to be treated with reasonable frankness, and if the insurers admit their sufficiency as preliminary proofs, they cannot afterwards, when the* sixty days have elapsed, and an action is brought to recover the loss, raise an objection to those proofs which might, had any defect been pointed out have been supplied or obviated. The insurers here, we think, must be held to have waived any defect in the proofs even if they were defective.
We think moreover that they were quite sufficient. If the insured had any insurable interest in the property, it appeared by the papers, and the loss was also established prima facie by the Captain’s protest. It is not necessary that the assured should furnish his proofs in a form which would entitle them to be read *13 as evidence of the facts therein certified, on the trial of the action. (Lawrence v. The Ocean Ins. Co., 11 J. R., 242; Talcott v. Marine Ins. Co., 8 id., 308; 4 Wend., 83; 3 Sandf., 26.)
The policy and the entries by the defendants’ agent showed the insurance and specified the property. The memoranda of shipment showed the quantity and the fact of shipment. These papers showed that the plaintiff was a common carrier and received the grain for transportation, the destination, and for whose account the grain was shipped, and the amount of the charges and freight. The protest showed the fact of loss or damage, and the company by its agents having previously taken the grain from the barge, and it having been sold under their direction, no fact was wanting to them, which was material, to show what the interest was which was the subject of insurance, or the fact of loss. The proofs were the original documents, and such as might reasonably be deemed satisfactory; if the Company wished for any more precise or formal proofs they should have required them. And this is especially true where, as in this case, the policy does not prescribe any form or mode of authentication of these proofs.
The inference justly deducible from the acts and declarations of the Company was, not that they refused to pay because the preliminary proofs were defective, but because they doubted the right of the plaintiff to recover. (See Miller v. The Eagle Life and Health Ins. Co., 2 E. D. Smith, 286, and cases there cited; and Peacock v. New York Mutual Ins. Co., 1 Bosw., 338.)
If therefore the plaintiff had any insurable interest, and had sustained any loss or damage which was covered by the policy, the defendants were not entitled to a dismissal of the complaint.
A common carrier may insure goods entrusted to him for transportation for his own protection. He has a special property therein, and an interest which is the proper subject of insurance. (Van Natta v. The Mutual Security Ins. Co., 2 Sandf. S. C. R., 490, and cases therein cited; Chase v. Washington Mutual Ins. Co. of Cincinnati, 12 Barb., 598.)
Had the insurance been upon his interest as common carrier only, it might be material to inquire whether the cause of loss in this instance was such that he was liable to the owners for the value of the goods. (3 Barn, and Ad., 478.) But the insu *14 ranee here was against any loss or damage he might sustain on cargoes on account of himself or others. The true construction of this language, in connection with the declaration of the perils and risks assumed, viz.: of the seas, canals, &c., &c., and all other perils, losses and misfortunes that shall come or happen to the hurt, detriment or damage of the goods, &c., laden on board, is, we think that the insurance was as well on his own account as on account of the owners, and although the loss might happen from a cause for which he would not be responsible to the owners, still if it was caused by a peril insured against, the Company are liable. The language is peculiar; it cannot be satisfied without applying it to losses sustained on cargoes held on account of other parties. And in this respect it is strikingly like an insurance by a factor on goods belonging to himself or held in trust or for account of others. And where the policy plainly imports an insurance upon the goods themselves, and not merely upon a special interest therein, the assured may recover their full value. (De Forest v. The Fulton Fire Ins. CDo., 1 Hall Sup. Crt. R., 84.)
This construction is fortified by the fact that the defendants were aware, when the insurance was made, that the plaintiff was a common carrier. They insured goods which he should transport as such, and they, by the very words of the policy, took upon themselves perils and risks of loss by causes for which he would not be responsible to the owners of the goods, and excluded nearly all losses arising from causes for which he would be responsible.
A policy should be construed rationally, and we cannot assume that the defendants received, or the plaintiff paid, a premium for insuring against perils, with full knowledge that if a loss was caused thereby, the insurers would not be liable; and yet this would be the effect of the transaction, if the defendants were not to pay for any loss unless it arose from a cause for which the plaintiff was liable to the owners.
We think the policy was a contract with the plaintiff, in view of his special interest in the property as carrier, but also upon the goods themselves, covering their value to the amount insured, for the benefit of the plaintiff and of those for whose account he held the goods. That they are therefore liable for the value of the property. Whether the plaintiff is, in this aspect of the case, *15 to be regarded as a trustee of an express trust in so far as bis recovery will enure to the benefit of the owners of the goods, or whether the owners should be parties to the suit, it is not necessary to inquire, since no such question has been raised, and the objection that there is a defect of parties, is waived, if not made by answer or demurrer. (See 2 Sandfi, ubi supra, and Grinnell v. Schmidt, id., 706; Stilwell v. Staples, 6 Duer, 63; Bogart v. O'Regan, 1 E. D. Smith, 590.)
The plaintiff received notice of the accident at Buffalo, by telegraph, on Sunday or Monday after it occurred, and as early as Monday the defendants’ agent was notified, and through him the defendants were informed thereof on Tuesday. The accident happened in the night of Saturday. Considering the fact that the "plaintiff lived at Buffalo, and that the accident occurred near Albany, it is impossible to say that even extraordinary diligence was not used to comply with the requirement to give immediate notice.
There is nothing in the claim that this was not done. This ground for dismissing the complaint was properly overruled.
The further ground of the defendants’ motion, viz., that the defendants were -discharged from their obligation by the omission of the plaintiff’s agents to make exertions and take precautions, &c., to preserve the cargo from further loss or injury during the three days, Sunday, Monday and Tuesday, which elapsed before the agents of the defendants arrived, was no reason for granting a dismissal of the complaint. Whether these facts might operate to limit the recovery, will be considered in connection with the charge and the defendants’ exceptions. But such neglect did not deprive the plaintiff of a right to recover for damages already sustained. There was no such condition in the policy, nor is there any rule of law by which, in the absence of some provision of that import in the policy, a forfeiture of all right to recover anything results from negligence in the care of the property after it is injured by a peril insured against.
There was no error in rejecting evidence offered to prove that the plaintiff had assigned his claim before suit brought, and was not the real party in interest. The pleadings did not raise any such question. If the suit was not brought in the name of the *16 Teal party in interest, the objection was waived by its not being set np as a defense.
Heither did the order drawn on the defendants, requesting them to pay 1ST. H. Wolfe & Co. for the corn, retaining for the plaintiff the freight and charges, furnish any reason for dismissing the complaint. It did not necessarily operate as a partial assignment of the claim, and if not paid, it wrought no change in the rights of the parties.
To the proper consideration of many, if not all of the remaining exceptions, it is necessary first to notice the obvious ground upon which the rulings excepted to proceeded. And it seems just, also, to say that these rulings were evidently made, not as an expression of the deliberate opinions of the eminent jurist, (now deceased,) before whom the trial was had, but were in a measure pro forma, with a view to the submission of the controverted questions of fact to the jury, and to leave to the General Term the determination of the questions of law arising upon the facts, which he deemed undisputed, and in relation to which the exceptions were taken.
The ground of many of these rulings seems to have been that the acts of the plaintiff’s agents amounted to an abandonment, (as understood in the law of insurance,) to the underwriters, and that the acts of the defendants, by their agents, amount to an acceptance of that abandonment; so that the grain insured became the property of the defendants, and they became liable to pay, (to the extent of the sum insured,) the value thereof.
Under this view of the subject, it was deemed wholly immaterial what portion of the corn was sound when taken from the barge, and what portion was damaged; and evidence on that subject was excluded. In the same view, it was wholly immaterial what price the corn produced at the sale; for if it had become the defendants’ property, their disposal thereof, at whatever price, could not impair the plaintiff’s right to recover its value, to the extent of the sum insured.
So, also, assuming that the defendants had accepted an abandonment, this may have been deemed a sufficient reason for holding the defendants concluded, and hence to have waived any objection to the manner in which the captain of the Hudson had been guilty of negligence in selecting his position in the tow, and *17 any defense arising out of any alleged neglect of the plaintiff’s agents in taking care of the property, and their refusal to permit the corn to be landed when that was proposed.
We think there is nothing to warrant the idea of abandonment, and an acceptance thereof, disclosed by the proofs. -
Indeed it is not clear that the plaintiff had any such interest in the property, or any such authority over it, that he could abandon it to ■ the insurers. (Van Natta v. The Mutual Security Ins., Co., 2 Sandf., 495.) Had the actual owners of the property claimed the entire proceeds of the sale, we do not perceive that the defendants could have resisted that claim by asserting title acquired through the plaintiff.
But the proofs show no abandonment or attempt to abandon, if the plaintiff’s authority were conceded. Although no particular form is necessary, an abandonment must be unequivocal and explicit. Here there is no pretence that any actual notice of an intention to abandon was given, nor that the plaintiff did or said anything affirmatively, indicating an intention to abandon. It is not, therefore, the case of an attempt to abandon, or of an abandonment, defective in respect of the sufficiency of the notice actually given, where the abandonment has been acted upon by the insurer, so as to waive defects in the notice and constructively to accept the abandonment. The most that can be claimed by the plaintiff is that his agents did nothing towards the care or preservation of the property, while the agents of the defendants, on learning its condition, took measures to save it, and to dispose of it, as by one of the provisions of the policy was stipulated.
But there was distinct testimony that what was done by the defendants was not done under any idea of making the property their own, or of incurring any responsibility founded on any such idea, and that this was known to the plaintiff’s agents, and assented to by them.
Babcock, one of the witnesses, and agent of the defendants, testifies that he saw James Savage, the agent of the plaintiff, “ who transacted his business at Albany,” before the agents of the defendants intermeddled with the grain, and that J. Savage “told us what was best to do, which we carried out to the best of our knowledge for the benefit of all concerned,” and got scows and boats and took out the corn. “We did nothing without advis *18 ing with him.”' “ It was mutually agreed we were to take charge of the corn for the benefit of whom it may concern; Savage assented * * and was present at the adjourned sale of the corn.”
This testimony is corroborated by Vanderhook,. the defendants’ surveyor.
James Savage, though examined as a witness, does not contradict this. If there are any circumstances at all in conflict with this testimony, (which, however, we do not discover,) still it must be taken as true, or the question should have been left to the jury, if the plaintiff insisted that the acts of the parties amounted to an abandonment and an acceptance thereof.
Again the policy in terms provided for the ascertainment of the loss by an examination which could only be had by landing the corn, and for the sale of the damaged portion, to ascertain for how much the Company was liable.
Moreover, the plaintiff had been apprised of the accident. If the authority of James Savage to act for him were doubtful, we have still no hesitation in saying that when the plaintiff took no measures to save the property, and his agents neglected to give; it any attention, the defendants were not bound to suffer it to remain, and go to decay at the peril of being charged with the same consequences that would result from having accepted an abandonment, viz.: with having made the property their own and become liable, as for a total loss.
And finally, no abandonment, nor anything tantamount thereto, is alleged in the complaint; a loss actually total is the sole ground of claim there asserted.
The idea of such an abandonment must therefore be excluded from our consideration in disposing of the defendants’ exceptions. And thereupon it becomes, we think, clear that the inquiries, what portion of the corn was damaged and what portion was not, and how much the damaged portion was damaged, became material and propér; and the sale at auction being the agreed mode of ascertaining the amount of the loss on such damaged portion, the price which it produced was also competent proof of the extent of the loss.
As insurers, the defendants were “liable for the loss on the damaged portion only." These are the very terms of the policy. *19 No proof was given respecting the disposition made of the proceeds of the sale. Perhaps we ought to assume, under all the circumstances, that the whole proceeds are in the defendants’ hands. If so, then under the arrangement they hold them for the benefit of whom it may concern. They are not prosecuted in this action to recover those proceeds as such, and so far as those proceeds arose from the sound corn, at least, there are no allegations in the complaint suited to a recovery for them; for them they are not liable as insurers, and the measure of their liability depends not at all upon the policy or the sum insured, but upon the amount of actual proceeds received by them on the sale.
So, also, laying the question of abandonment and its acceptance out of view, the question whether the captain of the boat was guilty of negligence, or, in the terms of the policy, “ want of ordinary care and skill ” in insisting upon having the boat towed in the position it was, assumes importance.
The policy expressly excludes liability for “ perils, losses and misfortunes arising from or caused by want of ordinary care and skill in' lading or navigating said boat.”
It is undoubtedly true, that in general where a loss arises from a peril insured against, the title of the assured to recover cannot be defeated by proof of mistake or error in judgment, or even negligence by the master or mariners employed in navigating the vessel, which brought the vessel within the peril; not because negligence and want of skill are perils insured against, but because, in general, the law looks to the immediate cause of loss, the peril which is insured against, and not to the secondary or remote cause, the negligence. (Mathews v. The Howard Ins. Co., 1 Kern., 3.)
But parties may specially agree upon a different rule, and this, we think, they did in this case. The defendants excepted a loss arising from want of ordinary care and skill in lading or navigating said boat. Now suppose the boat had been laden so heavily as to make the attempt to tow her on the Hudson river an act of manifest inprudence, evincing an entire want of skill or ordinary prudence, we should not hesitate to say that the defendants had protected themselves against the consequences of a loss which, but for such improper lading, would not have *20 occurred, although the immediate cause was her encountering a storm, in which, in that condition, she could not be kept-afloat.
We are not able to say, upon the evidence, that the case is so clear upon the question whether the captain was guilty of a want of ordinary care and skill, that the jury should have been directed to find for the defendants on that ground, or that we should direct a dismissal of the complaint, pursuant to the leave reserved at the trial. There is some evidence tending to show that the conduct of the captain in this respect was not of the character claimed, and that such a condition of the tow was not unusual. We think that question should have been submitted to the jury.
So, also, we think that the negligence of the plaintiff and his agents, in taking no care of the property and in refusing to permit it to be taken from the boat when partially submerged, was material in determining the extent of the defendants’ liability, and that the charge was in this respect erroneous.
Indeed, the charge is now sought to be sustained only on the ground of an abandonment, which has already been considered.
The assured is always bound, when the circumstances only warrant a claim for a- partial loss, to use ordinary care in preserving the property insured, after the danger is past. He is not at liberty, by sheer neglect, to suffer the goods to decay, and so needlessly aggravate the loss. To sanction this would be to permit the assured and his agents to convert a partial into a total loss by their own voluntary neglect. On the contrary, where the insurance is on a vessel, if repairs can be made, it is the duty of the master to repair. If the insurance is on freight or goods, if the vessel be lost and the goods are saved, it is the duty of the master to forward them by another vessel, if one can be procured, and on a principle of even more obvious obligation, he is bound to use ordinary cafe in preserving the goods from needless deterioration. These principles are, we think, too well .settled to require- extended discussion.
If, then, as one witness testifies, the means of removing the ■corn were at command, and were even tendered, and two-thirds of the corn might have been removed on Sunday and Monday, •dry and uninjured,' it was gross neglect to decline offers of assistance, and keep the corn on board until, by the swelling of the *21 portion that was wet, the seams of the vessel were opened and further damage was thereby caused.
There may be difficulty in determining how much of the damage to the corn resulted from this negligence, but if the plaintiff is in fault, the defendants should not be made to suffer thereby. The principle is not altered in his favor by a difficulty in proving the facts, when that very difficulty arises from the plaintiff’s fault.
The judge directed the jury to include in their verdict, if they found for the plaintiff, the amount of the charges paid on the corn by the plaintiff, and his freight. If the company were in truth liable for a total loss, and the value of the corn was (as it was admitted to be), of a greater sum than the amount insured, this instruction could not affect the result, and was therefere wholly immaterial; for whether the freight and charges were included or not, the plaintiff was entitled to recover the sum insured, less the defendants’ counterclaim, and no more.
But if the plaintiff was entitled^ only to recover for a partial loss, then it is material to consider the propriety of this instruction. And here, we think, the terms of the policy are conclusive. The insurance was on goods, and not on freight. The policy declared that the loss should be ascertained “ by separating the sound from the damaged portion—the company being liable for the loss on the damaged portion only—to be ascertained by appraisement or a sale at auction, the loss to be estimated according to the true and actual value of the said property hereby insured, at the time the same shall happen.” Here the elements of computation are given, and they clearly exclude the idea of increasing the amount by adding charges or freight, ipsis nominibus.
On the contrary, by adopting the actual value at the time as the standard, they do practically and presumptively include freight and charges in that actual value; because the value is presumptively enhanced to the full extent that charges have been incurred and freight earned; and as to freight not earned, we think that it was not covered by this policy.
For these reasons the verdict must be set aside and a new trial ordered, the costs of the trial and of the hearing at the General Term, to be costs in the cause, and abide the event of the suit.
Ordered accordingly.