By the Court—Hoffman, J.
The case is before us upon exceptions only. There has been no motion for a new trial, an appeal from which would have raised the question of the verdict being against evidence. There are no exceptions relating to the admission or rejection of evidence. The defendant excepted to the denial of a motion to dismiss the complaint. The grounds of this motion were renewed in the requests to charge, and exceptions to the refusal to comply with some of such requests.
The Court was requested to charge: “ That by the terms of the policy the loss was payable in sixty days after the loss was ascertained. The last proofs were served January 20, 1858. The action was commenced January 23, 1858. It was therefore prematurely brought, and the plaintiffs cannot recover.”
The Court refused so to charge, and submitted the question, as to the facts, when proofs were first served, to the Jury, under the rules of law applicable to proofs, and the defendants’ Counsel excepted.
*497 Another request was, to charge—“ That the facts proved in the case were sufficient in law to, and did, vest the legal title to said property in the said corporation, (the Hew York Foundry Furnishing Company,) before the fire, and the plaintiffs, therefore, cannot recover.”
The Court in the charge submitted the facts to the Jury, and refused to charge otherwise than as charged, and the defendants’ Counsel duly excepted.
Another request was, to charge—“That the facts proved in relation to The Hew York Foundry Furnishing Company and its incorporation, estopped the plaintiffs from denying its legal existence, and its title to this property.” But the Court refused so to charge, whereupon the defendants’ Counsel duly excepted.
The position involved in these last requests, that the property had been legally transferred to, and vested in the Hew York Foundry Company, and the plaintiffs were estopped from denying it, is without any foundation in the evidence. Van Tuyl directed his clerk to make an entry on the books of A. F. Kimball & Co., charging the whole property to Gibbs Gilbert, one of the Trustees. He thinks a list was made out of book accounts and stock, and delivered to Gilbert, and he thinks Gilbert executed a bill of sale to the Company. At that time, viz., September, 1857, A. F. Kimball was at the west, on business, in part, at least, for the firm. He returned in October, 1857. The intention of Van Tuyl to form a joint stock company had not been communicated to him. In October he was told by Van Tuyl that there had been no transfer of the partnership property, and would not be until all the debts of A. F. Kimball & Co., were paid. Kimball had expressed an apprehension that the purchases made might involve him in difficulty, as Van Tuyl was giving out notes of the firm of A. F. Kimball & Co. for the purchases.
I think the conclusion is very clear, that if there was an existing partnership in September, 1857, between Van Tuyl and Kimball, which covered the property insured, the *498 transfer to the' Foundry Company, or Gilbert for it, was unavailing.
In the first place, the absolute transfer by one partner of the Avhole property of the firm,, to break up the firm without the consent of the other, which could speedily have been obtained or refused, is not within a partner’s power. The cases which have gone the furthest to sustain such a transfer, in case of insolvency and for payment of debts, have not gone as far as this.
. Next, as to Kimball, the sale and proposed transfer was inconsummate and conditional. I have no doubt that he, or the creditors of the firm, through him, could have followed the property..
Again, the motion for a nonsuit was founded, in part, on the ground that there was no proof that Kimball had an insurable interest.
When this motion was made, there was some evidence of a partnership; the agreement in writing was produced, and Van Tuyl had sworn to the partnership. In his charge, the Judge left it to the Jury to say, whether there was such a firm as A. F. Kimball & Co. on the 13th of May, 1857, the date of the policy; and next, whether between the 13th of May, 1857, and the 5th of November, when the fire occurred, any change of interest had taken place. The Jury Avas to determine if such firm did exist, and if it did, whether it had parted with the property.
Now it may be, that some of the tests of a partnership, and consequent insurable interest, which the learned Judge gave to the Jury, might be open to doubt; but there is not any exception taken to any portion of the charge.
The Jury having by their verdict answered the substantial points of a partnership and its continuance, in the affirmative, and the- charge being impliedly admitted to be correct, it appears to me that the question of insurable interest is disposed of.
In. relation, to. the-question as to the preliminary proofs, the evidence; is this:
On the 19th of November, 1857, a statement of loss *499 was delivered, sworn to by Van Tnyl, essentially defective, in not having the certificate of any magistrate or notary public produced with it, as to an examination into the circumstances of the fire, and the character of the insured. The plaintiff Van Tnyl prepared these papers; handed them to the secretary, and was referred to the president. He asked the latter whether the proofs were correct. The reply was, he must be his own counselor. The plaintiff said he did not wish to employ counsel, and if there was anything wrong, he wished the president would name it. The latter repeated he must be his own counsel. He added that he knew the verdict of the Jury would be against him, but he would keep the plaintiff out of it a long time, perhaps altogether. The Secretary swears that the President looked over the papers, and said: These are not proofs; and told Van Tnyl to refer to the policy, and it would give him the information he required.
Either at this, or some other time after the fire, in a conversation about the loss, the President said, he would not take any trouble about an appraisal. He was satisfied that if there was any loss, it was a total one. When the sixty days was up, the 19th of November, the President told the plaintiff Van Tuyl, he did not consider that the Company owed them (the plaintiffs) anything.
On the 20th of January, 1858, proofs were handed in, on behalf of the plaintiffs, expressed to be in a letter accompanying them, “fully complying with the conditions of the policy.” The letter adds, that they were “ in addition to these furnished previously; and under the agreement rvith you, are furnished on, or as of the 19th of November, 1856. It was not considered necessary, but to avoid any technical defense which might be interposed.” These proofs were sufficient.
If the letter means that there was an agreement by which further proofs should be added, and to be considered as of the 19th of November, there is no testimony whatever, as to such an agreement. Indeed it is disproved.
Upon this subject the Judge charged as follows:
*500 “ As to the proofs of loss, if there was any formal defect in the proofs of loss—any mere inaccuracy with regard to the strict requirements of the policy of insurance— it is the law that in that case it is the duty of the Company to point it out to the assured; that they cannot be silent, and look over, apparently, any formal defects; and afterward, on the trial, or when the suit is commenced, tell the party, for the first time of his error. If, at the time of making service of the first proofs of loss, the officer of the Company, acting for the Company, put them refusal to pay A. E. Kimball & Co., or Van Tuyl, on grounds other than that of defective proofs of loss, the Company have the right to waive any merely formal defects or irregularity, and that is a waiver.”
“ If you find that these proofs of loss were received by the Company, or were not refused, on the ground of their being defective; or, that the President, or officer of the Company, put the refusal to pay the claim on the ground that there was no interest of A. E. Kimball, then the .suit was properly commenced at the time it was.”
“If you find, however, that the state of facts, as testified ito by Mr. Van Tuyl, is untrue, and that the preliminary .proofs were served subsequently, on the 20fch of January, 1858, this suit would be, in that case, prematurely brought, and the plaintiffs cannot recover.”
The action was commenced on the 23d of January, 1858. We have then the case of preliminary proofs, very defective in a particular, distinctly required by a provision of the policy, and of the officer of the Company warning the claimants that the papers were not proofs; that he must look to their sufficiency himself, apprising him also of the intention to contest the claim, and to keep the party out of it for a longtime, if not altogether, and an assertion that the Company owed the claimants nothing; with an admission, that if there was any loss, it was total, and an intention to defeat the claim, if it could be done.
The answer puts in issue, in general terms, the allegation of the complaint, that the conditions of the policy had *501 been complied, with, and on the trial, a motion to dismiss the complaint was made on the ground that the action was prematurely brought, as well as on other grounds, when the plaintiff rested.
If the defect in the preliminary proofs furnished the 19th of November, was not waived, then the action ought not to have been commenced until the 21st of March, 1858. The question is of moment.
In the Ætna Fire Insurance Company v. Tyler, (16 Wend., 385,) the certificate of a magistrate had been supplied, and the Supreme Court considered it a substantial compliance with the spirit and meaning of the condition in the policy. The Chancellor states the rule thus: “The law is well settled in this State, that if there is a formal defect in the preliminary proofs, and which probably could have been supplied, had any objection been made to payment on that ground, if the insurers do not call for the document or make any objection on the ground of its absence or imperfection, but put their refusal to pay distinctly on some other ground, the production of such further preliminary proof will be considered as waived.” (See also the passage at page 402.)
In O’Niel v. The Buffalo Fire Insurance Company, (3 Comst., 122,) the certificate produced was from a magistrate residing about a third of a mile from the fire; there were other magistrates and .notaries nearer than himself. The condition required a certificate from a magistrate, &c., most contiguous to the place of fire. 5To objection was made when it was produced. The only answer given by the Company was, “that they were not liable for the loss under the policy.”
In Bumstead v. The Dividend Mutual Insurance Company, (2 Kern., 81,) the objection that the suit was prematurely brought was not taken at the trial; and the statement of the particulars of the loss, was held to be a substantial'compliance with the requisition of the policy.
In Peacock v. The New York Life Insurance Company, (1 Bosw., 338 ; affirmed, 20 N. Y., 293,) the Court, upon *502 examining the circumstances, doubted whether the Company had any right to require the preliminary proof there insisted upon. But the opinion proceeds: “We are quite clear, that, when the preliminary proofs were furnished, if they were deemed detective in that particular, the attention of the plaintiff should have been called to it, or the defect must be deemed waived; and this we should hold even if the preliminary proofs were wholly silent upon the subject. Pair dealing requires reasonable frankness and candor from the Insurance Company. The defendants are allowed sixty days after the preliminary proofs are furnished before they can be required to pay. When, therefore, what are in good faith presented to them as preliminary proofs, are in any respect defective, common fairness requires that such defect be suggested, and that it be not held in reserve, to be used afterwards to obtain further delay of payment, or to defeat a suit brought for the money.”
A large number of cases upon the point are cited by Mr. Phillips on Insurance, volume 2, articles 1812, 1813, and notes. Among them is Heath v. The Franklin Insurance Company, (1 Cush. R., 257,) and Clark v. The New England Mutual Fire Insurance Company, (6 Cush. R., 342.) See also Turley v. The North American Fire Insurance Company, (25 Wend., 374.)
The very important case of The Columbian Insurance Co. v. Lawrence, (2 Peters’ U. S. R., 25, and 10 Peters’, 507,) is noticed by Chancellor Walworth in The Ætna Company v. Tyler, (ut supra,) and is stated and reviewed in Taylor v. The Merchants’ Fire Insurance Company, (9 How. U. S. R., 398,) Justice Nelson states, that the doctrine of the first decision on the point of waiver was virtually overruled by the second. The conduct of the Company in not objecting to the first certificate furnished, operated to mislead the party, and should have been regarded as a waiver.
The rule declared in Martin v. The Fishing Insurance Company, (20 Pick., 390,) is, that the insurers must make *503 the defect in the preliminary proofs a ground of their refusal to pay.
The results, which a careful examination of the autho rities will lead to, seem to me to be these: That the Courts have a decided tendency to exact from insurers that they should distinctly specify an intention to rely upon any defects in these preliminary proofs. Silence, when they are furnished, especially if accompanied with the plain assertion of a distinct ground of defense, or a general denial of their liability, will ordinarily amount to a waiver. And we see that the reason of this is, the tendency to mislead the claimants.
But I have not found a case—I doubt if any is to be found—holding that the assurer who apprises the assured that his papers are no proofs, and refers him to the policy, is bound .to go further and specify the particular defects. Bo case has decided that, if he apprises the insured that he will rely on the defect of proofs, he waives this objection by taking others which he insists will defeat the recovery. The Company told Van Tuyl, in very explicit language, that his proofs were worthless, and they should resist payment. How could the Company be deemed to have acquiesced in what they reject and declare to be insufficient? How did their officers in any way mislead the party when they told him to look to his policy, and to himself to find defects which they averred to exist ?
I am reluctantly compelled to say that the request to charge that the plaintiff could not recover, on the ground that the action was prematurely brought, ought to have been allowed, and the complaint dismissed; that the exception for not doing so is well taken; and that the judgment must be reversed and a new trial had, with costs to abide the event.