## SAMUEL JONES v. THE MECHANICS FIRE INSURANCE COMPANY.

1. To comply with the condition of a fire policy, requiring as particular an account of the loss and damage as the nature of the case will admit, where all the books, invoices and vouchers are preserved, the insured must give, in his preliminary proofs, full and exact particulars of his loss.

2. If the insurers intend to insist upon defects in the preliminary proofs, they should notify the policy holder, that he may amend them in time, if he can. If they are silent, or object on other grounds, it is evidence of waiver.

3. If, after a reasonable time to examine the proofs presented and received, the insurers do not object to them, but are silent until their time for payment has expired, or is about to expire, such delay shall be evidence from which the jury may infer a waiver of the defects.

4. Fraud and false swearing will avoid the policy; but mere mistakes in stating facts, which do not, in themselves, annul its conditions, and do not appear to be wilful misrepresentations, will not defeat the action.

5. The ledger and cash book of the insured may, in some cases, be received in evidence.

6. Questions not directly relevant to the issue, on cross-examination, are within the discretion of the judge, to prevent an undue expansion of the case by collateral facts.

7. A witness, in the same business in another place, and where the conditions are unlike, cannot be asked the proportion between his stock and sales, to raise a presumption of fraudulent statement by the plaintiff. (*Insurance Co.* v. *Weide*, 11 *Wall.* 438, distinguished.)

On motion for new trial.

This action is founded on two certain policies of insurance, and the several renewals thereof, issued by the defendants to the plaintiff; one dated April 16th, 1866, for $3000; the other dated January 24th, 1867, for $1500. Both are on the plaintiff's stock of merchandise, consisting of groceries and liquors of all kinds, and all such articles as are usually kept in a wholesale and retail grocery and liquor store, in his store at Morristown.

The policies are in the usual form, and, in the body of each, the company promise and agree to make good unto the insured all such loss or damage, not exceeding in amount the sum insured, as shall happen by fire to the property within the term of insurance; the said loss or damage to be estimated according to the actual cash value of the said property at the time the same shall happen; and to *be paid within sixty days after due notice and proof thereof made by the insured, in conformity to the conditions annexed to the policy,* unless the property be replaced, or the company have given notice to rebuild or repair the damaged premises, &c.

The store, with nearly all the goods of the plaintiff contained therein, was destroyed by fire March 2d, 1871.

The policies were continued, by renewals, beyond the time of the fire; a notice of loss, and account of the loss and damage,

accompanied with the oath of the plaintiff, were served on the defendants.

The total loss claimed by this statement, was $46.510.74. Total insurance, in different companies, $28,000.

Action was brought by the plaintiff, July 25th, 1871, for the amounts of the two above named policies of the defendants, and verdict rendered for the sums therein named, with interest.

Upon certain rulings of the justice at the circuit, and exceptions to this charge, and because the verdict is alleged to be against the weight of evidence, and unjust, a motion for a new trial was made.

The further particulars will appear in the opinion of the court.

Argued at June Term, 1872, before BEASLEY, Chief Justice, and Justices BEDLE, WOODHULL and SCUDDER.

For the plaintiff, *J. Vanatta.*

For the defendants, *C. Parker* and *B. Williamson.*

The opinion of the court was delivered by

SCUDDER, J.    It has been often decided that such policies of insurance are contracts of indemnity, in case of loss by fire, upon compliance with the terms and conditions therein contained.    They are therefore to be construed as other contracts between competent parties, to fulfill their intentions as they have expressed them in writing.

In this case, it is first objected that the court erred in refusing to nonsuit the plaintiff, because due notice and proof of the loss, in conformity to the conditions annexed to the policies, were not made sixty days prior to bringing the action.

Such proof and notice are, by the terms of the policies, conditions precedent, and the company have sixty days to pay the loss, after notice and proof are made.

By Article 9, of the policies, " Persons sustaining loss or damage by fire, shall forthwith give notice thereof in writing to the company," &c.    Notice was given to the defendants

by Edwin Ross, an insurance agent, on the day after the fire, and they have not objected to the form or the time of this notice at the trial of the cause.

In the same article it is stipulated that, " as soon as possible, they shall deliver as particular an account of the loss and damage as the nature of the case will admit, signed with their own hands; and they shall accompany the same with their oath or affirmation, declaring the said account to be just and true."

An account of the loss and damage, verified by the oath of the plaintiff, was received by the defendants, April 3d, 1871. The time seems longer than would be necessary, but meanwhile, the adjusting agent of the defendants examined the premises, had conversations with the plaintiff, and saw his books May 16th, in the office of plaintiff's attorney. These books appear to have been the day-book, ledger and cash-book. From these, an account of cash sales and credits was taken off. The blotter was not shown. The inventory made by the plaintiff in April, 1870, which is copied in his proof of loss served on the defendants April 3d, 1871, was shown to Colwell, who represented one of the other companies, March 6th, 1871, but does not appear to have been seen by Winterton, the agent of defendants. These agents were, however, examining the facts together. After the examination of the books, May 24th, 1871, A. J. Winterton, special agent to adjust for the several insurance companies having policies on plaintiff's goods, addressed a letter to him, by which he was notified that papers purporting to be proofs of loss, and served on said companies, having reference to the fire which occurred March 2d, 1871, which were served in the month of April next succeeding, were, upon careful examination, found to be insufficient and unsatisfactory, in that—

1st. The account of his purchases was without dates, and was not in detail, and did not furnish, as required, " a particular account " of the loss.

2d. The account of goods sold for cash and credit, was largely below the real amount shown by his books of account.

It was further stated, " that by the above, the insurance companies waive no rights under their several policies of insurance, and modify no objections to your claim for loss that might arise from other matters, but first wish your proof amended and completed, as required."

This letter is a distinct objection to the preliminary proof of loss, because it does not give a particular account, and the purchases given are without date, and not in detail. It does not allege that the proofs were not made in time, nor has this been insisted upon at the trial. Upon looking at the preliminary proofs delivered to the defendants, April 3d, 1871, we find them to consist, first, of the certificate of the nearest notary, pursuant to the condition of the policies; second, *Schedule A*, an inventory of goods, April, 1870, belonging to Samuel Jones, Morristown, N. J. This is itemized into named articles, quantities, and prices carried out, and amounting in all to $43,241.00; third, *Schedule B*, goods bought by Samuel Jones from April 1st, 1870, to March, 1871. In this, the names of the parties from whom the purchases were made, and the amounts purchased of each, are given; but there are no dates, and the articles purchased are not named. Thus: " Geo. W. Elder & Co., $1386.96," and others following in like form. In several, the articles are given, with amounts, but no names; in others, the places where purchased. The amount foots up $21,961.39. *Schedule C* contains the goods saved from the fire, amounting to $465.75; *Schedule D*, amount of inventory taken April, 1870, $43,241.00; goods bought since April 1st, 1870, to March, 1871, $21,961.39—total, $65,202.39. Deducting goods sold from April, 1870, to March, 1871, $22,782.37; less twenty per cent. profits, $4556.47—$18,225.90; balance, $46,976.47; goods saved from fire, $465.75 — leaving a total loss of $46,510.74. *Schedule E* shows the policies of insurance on the goods of plaintiff.

The objections in the letter of May 24th are to *Schedule B* and the amount of sales given in *Schedule D*. The first is alleged to be incomplete; and the second, false.

The plaintiff returned answer to this letter, served June 6th, 1871, that without admitting there was any insufficiency in the proofs of loss, but to give all information in his power, he furnished the particulars, so far as he was able, of the bills of purchases mentioned in *Schedule B*, and also admitted that the balance of sales on *Schedule D* should be $21,025.46, instead of $18,225.90.

The other particulars are copies of invoices, stating also additional purchases, which were omitted in the original proof.

July 20th, 1871, A. J. Winterton, special agent for the several insurance companies, by letter to the plaintiff, made a formal demand upon him for a written elimination of the inventory of April, 1870, as furnished in his several proofs of loss, showing what property therein enumerated he claimed *was* inventoried by the U. S. Government, and what property therein enumerated he claimed *was not* inventoried by the U. S. Government, at the time of the seizure made; also, a demand on him for a written statement, giving the location and quantities and quality of stock on the premises at the time of the fire.

To this formal demand, the plaintiff, by his counsel, on July 21st, 1871, answered, refusing to comply.

July 25th, 1871, this action was brought to recover the amounts insured by the defendants. The seizure referred to in the last communication was made by the U. S. Internal Revenue officers, in November, 1869, for alleged violation of the revenue laws, and was continued until March, 1870. The inventory named was that made by these officers at the time of seizure.

These facts must be stated and considered in their order, to determine whether the action was prematurely brought.

The defendants insist that the action could not be brought until sixty days had elapsed after June 6th, when the additional particulars were given.

This depends, in the first place, upon the sufficiency of the proof of loss served April 3d, 1871. It must appear to be

as particular an account of the loss and damage as the nature of the case will admit.

This has often been characterized as a harsh rule, but with the modification that the account shall only be as particular as the nature of the case will admit; this is hardly just. It is, however, the contract between the parties, and in the many cases to be found in the books, the courts have stead-fastly held the insured to a compliance with it.

In cases where the fire has not only consumed the goods insured, but all books and vouchers from which an account could be made, the insured has not been held to do what was vain and impossible, but only to such performance as the nature of the case would admit. *Norton* v. *R. & S. Ins. Co.*, 7 *Cow.* 645; *Mason* v. *Harvey*, 8 *Ex.* 819; *Roper* v. *Lendon*, 1 *E. & E.* 825; (102 *E. C. L.*)

In the present case, the plaintiff's books were saved; he had many of the invoices and vouchers for his purchases between April 1st, 1870, and March, 1871; and others could be easily procured. I think therefore the nature of his case admitted of full and exact particulars. These he did not give in *Schedule B.* He made no statement of the articles purchased, or the times when they were bought. The names of the persons from whom goods were alleged to have been bought, and the gross amounts, would not enable the insurers to test the accuracy of the account delivered to them. It would have imposed no great additional burden upon him to state in his first proofs the items of his several purchases, so far as he had or could obtain vouchers for the same, *as was done in the subsequent proofs.* The sales being entered each day as cash, I think are sufficiently specified in the gross amounts, as there could be no object in giving the amount of each day's sales, if it were possible so to do.

In *Lycoming County Ins. Co.* v. *Updegraff*, 40 *Penna.* 311, the gross amount of the inventory at the close of the year, and of purchases up to the date of loss, were taken from the books, and stated together as a total sum. This was held to be insufficient. This case is different, in containing a par-

ticular account of the inventory, and partial statement of the purchases carried out in separate sums, but still the full particulars, which were important for the defendants to know, and which the plaintiff had it in his power to give, were not rendered.

A detailed list of the articles lost, where this is practicable, is the intent of the parties, and courts should only relax the requirement where the nature of the case does not admit of such particularity. *Catlin* v. *Springfield Fire Ins. Co.*, 1 *Sumner C. C.* 434. The plaintiff however claims that if this be so, the defendants by their acts have waived a strict compliance with this condition. In many cases this subject of waiver is considered, and different conclusions have been reached by the courts.

In *Roumage* v. *Mech. Ins. Co.*, 1 *Green* 110, the court held where the certificate of the nearest clergyman was defective in not setting out the amount of the loss, and the company resolved that they would not pay the claim made by the insured, or any part thereof, believing that it was founded in an attempt to defraud the company; that this resolution, and the silence of the company in regard to the defect in the certificate, was not a waiver of such defect.

Other cases have held that the company will be considered as waiving the informality in the notice, if, when the notice is given, they do not object to the form of it, but refuse to pay on other distinct grounds. *Schenck* v. *Mercer Ins. Co.*, 4 *Zab.* 447; *Francis* v. *Somerville Ins. Co.*, 1 *Dutcher* 78. But upon the point that the defect is not waived by receiving it without objection, there has been no other decision in this court until recently.

Upon reading the opinions in that case, it will appear that the court differed, and reluctantly yielded to the great authority of Chief Justice Marshall, in *Columbian Ins. Co.* v. *Lawrence*, 2 *Peters* 25. But this case, upon rehearing, (10 *Pet.* 507,) was virtually overruled, and again in *Tayloe* v. *Merchants Ins. Co.*, 9 *How.* 404, most decidedly disapproved.

The first two cases are commented upon by Chancellor Walworth, in *Ætna Fire Ins. Co.* v. *Tyler*, 16 *Wend.* 401, and the good sense of the rule, as held in the New York courts, was vindicated. This is stated in his language as follows: "Good faith on the part of the underwriters, in such a case, requires that if they mean to insist upon a mere formal defect of this kind in the preliminary proofs, they should apprise the assured that they consider the same defective in that particular, or to put their refusal to pay upon that ground as well as others, so as to give him an opportunity to supply the defect before it should be too late; or if he neglects so to do, then silence should be held a waiver of such defect in the preliminary proofs, so that the same shall be considered as having been duly made according to the conditions of the policy."

These cases, as in *Roumage* v. *Mechanics Ins. Co.*, relate to the fact of the preliminary proofs requiring the certificate of loss from the nearest magistrate; but other cases have extended the doctrine to the clause requiring the insured to give notice of the loss forthwith, and to render a particular account within a limited time, and other preliminary proofs. *McLaughlin* v. *Mut. Ins. Co.*, 23 *Wend.* 525; *Gilbert* v. *N. A. Ins. Co.*, 23 *Wend.* 43; *Norton* v. *R. & S. Ins. Co.*, 7 *Cow.* 645; *Francis* v. *Ocean Ins. Co.*, 6 *Cow.* 404; *Cornell* v. *Le Roy*, 9 *Wend.* 163; *Bodle* v. *Chenango Ins. Co.*, 2 *Coms.* 53; *O'Neil* v. *Buffalo Ins. Co.*, 3 *Coms.* 122; *Bumstead* v. *Dividend Ins. Co.*, 2 *Kern.* 81; *Kimball* v. *Hamilton Ins. Co.*, 8 *Bosw.* 495; *Underhill* v. *Agawam Ins. Co.*, 6 *Cush.* 440; *Brewer* v. *Chelsea Ins. Co.*, 14 *Gray* 203; *Angell's L. & F. Ins.* 244, &c.

In *Priest* v. *Citizens Ins. Co.*, 3 *Allen* 604, the court in stating the distinction between waivers of matter of form and substance, say approvingly: "It is said that stipulations as to the preliminary proofs do not touch the substance or essence of the contract; but relate only to the form or mode in which the liability of the company shall be ascertained and proved. Besides, such preliminary proofs must necessarily be submit-

ted to the officers of the corporation, who must pass on its sufficiency, and it therefore comes within the scope of their authority to say whether proof of the losses is sufficient. It may be added that in ascertaining and settling losses, they frequently act upon personal investigations by themselves or their agents, and thus obtain knowledge that renders the preliminary proofs wholly immaterial." It was held there that there was evidence to go to the jury, showing not only an implied but an express waiver.

The case of *Shawmut Co.* v. *Peoples Ins. Co.*; 12 *Gray* 535, denies the authority of a special agent to waive these proofs, but admits that the president of the company may. But as the ruling of the court in that case may be thought to be against the principle above stated, it is worthy of notice that it cites 2 *Pet.* 53, as an authority upon which it is based. So it will be found that courts of other states that have held differently have followed this case. See *Beatty* v. *Lycoming Ins. Co.*, 66 *Penn.* 9; *Keenan* v. *Missouri Ins. Co.*, 12 *Iowa* 126.

The conditions of insurance policies are numerous, varied and minute in details. These are doubtless essential for their protection against fraud, and for their complete security; but they are perplexing to persons not familiar with their requirements and construction. To prevent sharp practice and unfair advantage from a superior knowledge, it seems most just, and without imposing an undue burden on the insurance companies, to hold that when the preliminary proofs are received, if there are defects, they shall so state to the insured, that he may amend them in time, if they can be amended. If they intend to deal fairly with an honest loss, why should they not so state? If they believe the claim of loss is a fraud, let them so state, and contest it on that ground. The interests involved are so great, so many persons hold all they possess dependent on these securities, that both insurers and insured should be held to the utmost good faith; and such has been the manifest purpose of the courts.

A recent case in our court, *Basch* v. *Humboldt Ins. Co.*,

6 *Vroom* 429, has settled this construction, so far as the question was involved, in the determination of that case.

In the present case there was silence on the part of the insurers up to a certain time, and then they objected to the particulars given in one of the schedules, which were imperfect. This raises a further question, whether the insurer may wait until his sixty days credit for payment is about to expire, and then object, and upon new particulars being given, claim an extension of sixty days longer, and so continue to prolong the payment, from time to time, as new defects may be discovered. If he may do it once, he may do it again and often. To prevent such abuse of this right to object, which the insurer undoubtedly has, it must be held that if, after a reasonable time to examine the preliminary proofs presented and received, the insurer does not object, but is silent until his time for payment has expired, or is about to expire, such delay shall be construed as evidence from which the jury may infer a waiver of the defects. The objection comes too late, because the insurer obtains thereby an unfair advantage, which would be obviated by prompt action on his part. If he must object, as we have already held, he should do it promptly, otherwise he would have the advantage of his own wrong in the delay of payment.

This element of delay does not appear in other cases which seem to maintain a contrary doctrine. Thus in *Shawmut Co.* v. *Peoples Ins. Co.*, 12 *Gray* 539, it is said " the defendant's president, far from assuming to waive any of the conditions of the policy, or to accept defective proofs of loss as sufficient, took extraordinary pains to give the plaintiffs notice of the defects, and ample opportunity to cure them. Immediately he gave the notice when the first statement was received. Upon receiving additional papers, he informed him they were not full enough, and *a few days* later delivered the papers for correction, calling his attention especially to the want of any statement of the plaintiff's interest. These were peculiar

grounds for requiring information on this point." And so he promptly objected. This differs from the present case.

In *Kimball* v. *Hamilton Ins. Co.*, 8 *Bosw.* 495, the preliminary proofs were handed in, the president of the company looked over the papers, and told the insured, " these are not proofs, and referred him to his policy for information." The insured was promptly warned of the defects.

In *Peacock* v. *New York Ins. Co.*, 1 *Bosw.* 338, the court says: " The defendants are allowed sixty days after the preliminary proofs are furnished, before they can be required to pay. When therefore, what are in good faith presented to them as preliminary proofs, are in any respect defective, common fairness requires that such defects be suggested, and that it be not held in reserve, to be used afterwards to obtain further delay of payment, or to defeat a suit brought for the payment."

. That, or something like it, appears in this case. The first proofs were served April 3d, 1871; objections were made and further particulars required, May 24th, 1871. Fifty-one days had elapsed. Additional proofs were served, June 6th, 1871. July 20th, 1871, further particulars were required. Forty-four days had elapsed. All the books and proofs in the plaintiff's possession had been submitted to the inspection of the company's adjusting agent before the suit was brought.

The court rightly refused to non-suit the plaintiff, and permitted these facts to go to the jury as evidence of a waiver of complete preliminary proofs on the part of the plaintiff, at the first service.

It was next urged that there was fraud, or attempt at fraud, by false swearing, or otherwise, which, by the condition of the policies, caused a forfeiture of all claim on the defendants.

The facts relied on to sustain these reasons are—

1st. The great discrepancy between the inventory made by the government officers, when they seized the plaintiff's store in November, 1869, and that made by him in April, 1870, when he regained possession.

2d. The alleged statements made by the plaintiff to Win-

terton and Colwell, soon after the fire, that his stock burned, or his loss amounted to about $27,000 or $28,000, whereas his claim shows $46,510.74.

3d. The affidavit made by the plaintiff, May 23d, 1871, which contained the statement that his inventory, dated April, 1870, as included in his proof of loss, was taken by him *without assistance;* whereas it appeared in the evidence that his clerk, Dufford, helped count and gauge, while he made all the entries and estimates, and that it was entered in a book; whereas, it appeared that it was first made on slips of paper.

4th. Further, that there was an error in the account given in the proofs of the amount of sales. This was taken from the books by Edward Pierson, for the plaintiff, and appears to have been his mistake.

5th. Also, that it was not shown that all the goods purchased after March, 1870, went to the store at Morristown, but some to other places, though the entries were on the books.

6th. And in stating that the schedules and account were full, accurate, just and true. All of which, it was alleged, were untrue, and showed fraud and false swearing within the condition of the policy, and avoided it.

All the facts and evidence upon which the charges of fraud and false swearing were based, the impeachment of the witnesses by contradiction and untrue statements, and especially of the plaintiff's testimony, were fairly and fully submitted by the judge in his charge to the jury, and I find no misdirection in the charge.

The corrections in the account were made before the suit was brought, and it was competent for the plaintiff to show that they were made by mistake, and restate them. As to the alleged false swearing in the affidavits and untrue statements of the value of the property destroyed, it is not sufficient to show that there were errors in the fullness and accuracy of the sworn statement of loss, and in the affidavit of a collateral fact, as to who helped in making an appraisement. These may be explained and corrected, if done in good faith.

Fraud and false swearing will avoid the policy, but mere mistakes in stating facts, which do not in themselves annul its conditions, and do not appear to be wilful misrepresentations, will not defeat the action. *Campbell* v. *Charter Oak Ins. Co.*, 10 *Allen* 213; *Levy* v. *Baillie*, 7 *Bing.* 349; *Britton* v. *R. Insurance Co.*, 4 *Fost. & Fin.* 905.

The jury have passed upon all the several matters which were submitted to them by the court, and although there is conflict in the testimony and doubts suggested, yet there is not that clear preponderance of proof against the verdict which would justify the court in disturbing it.

The several exceptions to the ruling of the judge, by which it is said that illegal evidence was admitted and legal evidence ruled out, to the prejudice of the defendants, I will consider briefly.

It was objected that the plaintiff's ledger and cash book were admitted in evidence. These were the original and only entries of the sales made by the plaintiff from April, 1870, to March, 1871, which were made in the course of his business, and were the originals from which the sales account was taken, which was stated and delivered as part of the proof of loss, as the correctness of that sales account was in issue, and these books had been called for and examined by the defendant's agents, as part of the plaintiff's preliminary proofs and were verified by the plaintiff's oath, they were admissible upon that issue. If they were shut out they would exclude all possible testimony of such sales.

The question put to the plaintiff on his cross-examination by the defendant's counsel, as to what debts he owed, and how much he was worth, were not directly relevant to the issue, and were within the discretion of the judge to prevent an undue expansion of the case by collateral facts and issues. Their exclusion is not good cause for setting aside the verdict.

The further question was asked of William H. Camp, a witness for the defendants, who resided in Newark, whether the amount of stock carried by his firm ($50,000) for their

Jones v. Mechanics Fire Insurance Co.

average year's sales, ($500,000) was or was not the prudent proportion of stock to sales in that business.

This question was overruled, and exception taken. The testimony was offered to raise a presumption that the plaintiff's stock, as he claimed, was not in the usual proportion to sales in that business, but much greater, and therefore fraudulent. This question was pressed on the authority of *Insurance Co.* v. *Weide*, 11 *Wallace* 438, where it was held that such question, of a merchant in St. Paul, was competent in a suit by another in the same business, in the same city.

Admitting this to be so, the conditions were alike upon which the presumption was to be based. It was the same kind of business in the same city; but here a merchant in Newark, a large city, was asked the proportions of his stock and business; and others were to be called for the same purpose, in order to determine the reasonable and probable proportion between the stock and sales of the plaintiff trading in a small place like Morristown. There was no proper or proximate relation between the two, and the evidence was calculated to mislead the jury. A stock in a large city is turned more rapidly than in a small place, and it is more likely to accumulate in the latter, where the sales are slower, and the business continued for several years. Other differences will suggest themselves, growing out of the peculiarities of men and places. Such testimony does not afford any reasonable inference as to the principal matter in dispute. Nor does it, in the language used in the case above cited, "conduce in any reasonable degree to establish the probability or improbability of the fact in controversy." See, also, 1 *Greenl. Ev.*, § 52, 448; *Roscoe's N. P. Ev.* 38, 88.

I have thus examined all the material points raised in this case, as the importance of the issue demands, and find no reason to set aside the verdict of the jury.

The motion for a new trial is refused.

CITED in *State Ins. Co.* v. *Maackens*, 9 *Vr.* 564; *Northampton, &c., Ins. Co.* v. *Stewart*, 10 *Vr.* 486; *Carson* v. *Jersey City Ins. Co.*, 14 *Vr.* 300.