## MOLIERE, *against* THE PENNSYLVANIA FIRE INSURANCE COMPANY.

Policy of insurance against fire expressed to be made according to certain conditions, one of which provided that the insured should deliver to the secretary of the insurers, a particular of what materials the walls and roof of the building insured are constructed, and that if any person should insure his or their building, or goods, and cause the same to be described in the policy, otherwise than as they really are, so as the same be charged at a lower premium than therein proposed, such insurance should be of no force.  In an action by the insured against the insurers who took defence on the ground of an alleged misdescription of the premises in the policy, *Held*, that parol evidence was admissible, that the misdescription, if any, arose from the mistake of the secretary of the insurers to whom the buildings were particularly and accurately described at the time of the insurance.

The first argument of a case, is matter of right; rearguments are subject to the order and direction of the court.

THIS was an action on a policy of insurance against fire, dated 11th February, 1826, No. 505, originally made for one year, and afterwards renewed from year to year, by endorsements on the policy.   The premises insured (which with their contents were totally consumed by fire, on the 19th of June, 1829,) were described in the policy, and in the order of insurance as "a brick icehouse, one story high, and about forty feet square—also, on a brick icehouse adjoining, one story high and about thirty-two feet square, situated on the east side of George Street, between Shippen and Plumb streets, and also, on the ice which now is, or may be contained in the said houses."

The policy was expressed in the body of it, to be made by the defendants " according to the tenor of their printed proposals, and conditions hereunto annexed."   The first of these conditions is in these words—

" Persons desirous to make insurance on buildings, are to deliver to the secretary of the company the following particulars, viz :

1st. Of what materials the walls and roof of each building are constructed, as well as the construction of the building contiguous thereto.

2d. Whether the same are occupied as private dwellings, or how otherwise.

3d. Where situated.

4th. The name or names of the present occupiers.  Each building must be separately valued, and a specific sum insured thereon,

(Moliere *v.* the Pennsylvania Fire Insurance Company.)

and in like manner, a separate sum insured on the property contained therein.

In the insurance of *goods,* wares or merchandize, the building or place in which the same are deposited, is to be described; also whether such goods are of the kinds denominated hazardous, and whether any manufactory is carried on in the premises. And if any person shall insure his or their building or goods, and shall cause the same to be described in the policy, otherwise than as they really are, so as the same be charged at a lower premium, than is herein proposed, such insurance shall be of no force."

The amount and rate of insurance was, as stated in the order and policy of insurance.

$1200 on the first mentioned house,
  600 on the other,
1000 on the ice in the first mentioned house,
  600 on the ice in the other,

------

$3,400

Sum to be insured, $3,400, a 50 cents per 100,     $17
                                  Policy    1

                                         $18

It appeared by the rates of insurance, in one of the expired renewals endorsed on the policy, that the premium on the ice was estimated at twenty-five cents per one hundred dollars, which applied to the ice and building at the date of the policy, shewed that the above average rate of fifty cents on the whole, was equal to say seventy-two cents on the houses, and twenty-five cents on the ice.

The plaintiff having read the order and policy, and the renewals endorsed on it, gave in evidence, a correspondence with the defendants, in which, shortly after the fire they stated, that, "from the representation made to them of the buildings intended to be insured, and the description in the order and policy, they did not consider themselves liable, &c."

He then produced as a witness, *Frederick G. Wolbert,* who proved the loss of the ice houses and their contents by fire, the quantity and value of the ice contained in them when burnt, and gave a description of the ice houses before his testimony was objected to.

The description as given by this and the other witnesses, was, that these ice houses were cylindrical wells of brick, of depth about equal to their diameter, paved with brick at the bottom. The walls were of brick, raised above ground about seven to ten feet, and terminating at the roof which rested upon them. The principal superstructure was the roof, which was of great height, and extended over and beyond the brick walls downwards, until it met a square wooden weatherboarding, which formed a fence or shelter for the ice houses, at a sufficient distance from the walls to allow the neces-

sary ventilation. Thus the exterior of the ice houses was altogether wooden; the woodwork consisting of the roof and weatherboarding. This weatherboarding was a necessary protection against heat, and without it the ice could not have been preserved. There was no more wood work about the ice houses, than was necessary for the purposes of an ice house, and the mason work was raised above the ground to a greater height, than is usual in the largest ice houses. (Of fifteen witnesses examined, ten testified that their correct denomination was *brick ice houses*.)

The plaintiff having offered to prove by the same witness what took place at the time the insurance in question was effected, the objection was made which the Judge overruled.

This testimony was offered for the purpose of proving, that at the time the insurance was made, the plaintiff had "delivered to the Secretary of the Company," a particular description of the ice houses in a memorandum, which was left with the secretary, and had been since lost by him, (due notice having been given to produce it at the trial,) and further, that the plaintiff had at the same time verbally at great length, minutely described to him the ice houses as they really were, omitting nothing that was calculated to enhance the premium, but on the contrary, disclosing in the fullest manner the construction and materials of every part of them; and that the order was then written down by the secretary, to suit himself, with his own hand, &c.

The cause was tried before Mr. Justice Rogers, at *Nisi Prius*, the 26th of November, 1832. A verdict was found for the plaintiff, for three thousand one hundred and sixty-seven dollars, thirty-five cents. The defendant now moved for a new trial, and assigned for reasons :—

1st. That the court admitted the evidence of *F. G. Wolbert*, to prove a *parol* contract, different from the contract upon which the suit is brought.

2d. That the verdict of the jury, was against the charge of the court, and against the evidence.

There was no specification of the points to be relied on, in support of this reason.

*Kittera* and *Chauncey*, for the defendant, contended in support of the motion :—

The effect of the decision is to substitute the verbal agreement of the officer of the corporation, for the covenant executed under the seal of the corporation, and to try an issue different from that presented by the record, and to meet which the defendant would be without notice. All negociations prior to, or contemporaneous with an agreement under seal, are merged in it. *Parkhurst* v. *Van Courtland*, 1 *John. C. C.* 273. *Patterson* v. *Hall*, 9 *Cowen*, 784. The policy itself is considered to be the contract between the parties, and

(Moliere *v.* The Pennsylvania Fire Ins. Co.)

whatever proposals are made or conversation had between the parties prior to the subscription, they are to be considered as waived, if not inserted in the policy, or contained in a memorandum annexed to it. 13 *Mass.* 96. 99. *Higginson* v. *Dall,* 1 *Penn. Rep.* 417.

The general rule undoubtedly is, that when by consent of parties, their agreement is reduced to writing, parol evidence is not admitted to contradict, alter, or vary it. The exceptions to the rule, it is not easy to state with clearness. It is allowed in cases of fraud or mistake, to *defeat* the writing, and to explain the meaning of doubtful terms, and to establish trusts. The general doctrines on this head, are collected in 3 *Stark. Ev.* 994. 1002. 13 *Petersdorf,* 108. He then examined the cases decided in this court, for the purpose of showing that they fell short of the present case, and cited in addition, *King* v. *Baldwin,* 2 *John. C. R.* 554. *Schermerhorn* v. *Vanderheyden,* 1 *John. R.* 139. *Erwin* v. *Saunders,* 2 *John. C. R.* 585. 1 *Cow.* 249. 1 *Hopk. C. R.* 124. 134. *Jefferson Ins. Co.* v. *Cathrall,* 5 *Wend.* 541. 547. 7 *Id.* 72. An application for an insurance, is not a warranty, unless inserted in the policy. A description in the policy is a warranty that the property is as described, and it matters not whether the misdescription is the result of fraud or mistake. *Fowler* v. *Etna Fire Ins. Co.,* 6 *Cow.* 673. 7 *Wend.* 27. A slip of paper to show that the order of names was different from those in the policy, was rejected. 11 *Petersdorf,* tit. *Ins.* 97, cites *Masden* v. *Reed,* 3 *East,* 572. Supposing that a mistake in drawing articles, may be proved by parol, yet in an action of covenant on written articles, the plaintiff cannot prove by parol evidence, an agreement different from that on which he has declared. *Barndollar* v. *Tate,* 1 *Serg. & Rawle,* 160.

The object of the testimony is to show, that the order as reduced to writing by the secretary of the company, did not correspond with the directions given by the plaintiff. But the order is not the act of the company. It matters not by whom it is written: it is signed by the assured, and is exclusively his act. In a case of fraud, indeed, as if one order was written and read to him, and another substituted for it, such evidence would be admissible. But fraud is not alleged. The plaintiff offers to prove by parol, that the order is not what he gave, but is the secretary's conclusion from another description. This he cannot do. The order is his own. Mr. *Smith* had never seen the property, and if the plaintiff employed him as his agent to write the order, from a verbal description which resulted in the written order, with which he was satisfied at the time, he shall not be permitted after various renewals of the policy, years afterwards to say that he had not sufficiently reflected upon the language of the order.

The plaintiff contends that the inaccuracy, was the mistake of the defendants themselves. But the order cannot be considered in any other light, than as the sole and exclusive order of the plaintiff. It is the business of the officer to receive the order, and to say yes or

no; but not to construct the order. It is not within his power so to bind his principals. Both parties are to act in their proper spheres, and both with openness and sincerity.

*Cadwalader*, for the plaintiff, stated the question to be in substance, the same as was decided on a similar policy, in the *Columbian Ins. Co. v. Lawrence,* 2 *Peters,* 25. 39. 55, 56, on which authority he relied to show, that the testimony was admissible, as tending to negative the possibility of the alleged misdescription having affected the rate of premium, which was the sole criterion on such a policy as this, to determine the materiality of the misdescription complained of. He cited other cases to the same effect.

He also contended, that it was competent evidence of an admission by the defendants, that the description in the policy, was in fact correct.

He then stated, that if the case turned upon the doctrines peculiar to Pennsylvania, as to admitting parol evidence of matters occurring at the time of making a written contract; these doctrines were perfectly well established, and their applicability to the case, was beyond dispute.

Lastly, that as the secretary of the insurers by consent of both parties, acted as the scrivener or draftsman of the order and policy of insurance, the evidence was competent, as tending to show that the mistake complained of, was one for which the defendants were alone the party to blame, and who ought to suffer; and one in which chancery would interpose to amend and rectify the policy.

Afterwards the court directed a second argument of the case, which being reached on the last day of the session, the defendant's counsel stated, that there was not time for the argument during the remaining period of the session. The plaintiff's counsel insisting that the case should be disposed of, the court ordered that the counsel should furnish written arguments. To this the defendant's counsel objected, but the court held, that although they would not make a compulsory order of this sort, in a case which had never been argued, yet that re-arguments were directed for the satisfaction of the court alone, and were altogether subject to their discretionary control and direction.

The court ordered that the counsel for the defendants, submit to Judge SERGEANT, a written argument on their part within sixty days, in default of which the rule to be discharged, and judgment to be entered on the verdict on the first day of the succeeding term.

A written argument in substance as above set forth, was furnished by the defendants' counsel, within the period limited.

The opinion of the court was delivered by

SERGEANT, J.—A mistake in a policy may be rectified, when it clearly appears from the label or other satisfactory evidence, that it

(Moliere *v.* The Pennsylvania Fire Ins. Co.)

was reduced to writing in terms not conformable to the real intention of the parties. *Motteux* v. *London, Ass. Co.,* 1 *Atk.* 545. *Henckle* v. *Royal Exch. Ass. Co.* 1 *Ves.* 317. I see no reason why the same thing may not be done in the present instance, by correcting the policy according to the verbal description furnished to the secretary, if the evidence shows that he omitted a material part of that description. The memorandum, which has been termed the order, possesses no greater efficacy than the policy, and may itself be corrected in the same manner. It is immaterial whose act it was; it is sufficient if the evidence shows, that it did not conform to the intentions of the parties, whether by the mistake, or inadvertence of the person who drew it up. It may be remarked, however, that by the conditions annexed to the policy, the secretary is designated as the person to whom the description is to be furnished. If he, acting in this capacity, undertakes to reduce the verbal particulars to writing, and file them as a memorandum or order, the insured has a right to expect he will insert all that is material; and if he omits to do so, I should deem it his act, and not the act of the insured, and that the company would, in equity, be precluded from setting up this omission, as an objection to a recovery in case of loss, in the same manner as where the policy is not made conformably to the order. The evidence to support such an allegation, ought to be clear and satisfactory. But of that, the jury were to judge. I am of opinion that the evidence was properly received, and that the rule to show cause why a new trial should not be had, be discharged.

Rule discharged.*

---

* Judgment in this case was entered in July term, 1834.