*Margin notes: 4. —— Foreclosure of tax title. 5. TAX SALE.*

---

## AYRES v. THE HARTFORD FIRE INSURANCE COMPANY.

1. Insurance: INSURABLE INTEREST. The assignee of a title bond, for real estate, upon which valuable improvements have been made by the obligee, has an insurable interest in the property therein described.

2. —— CONTINUING INTEREST. Where the assured, having an insurable interest at the time the policy is issued, aliens the property and retains no

interest therein, the policy, as to him, is at an end; but if an interest is still retained, the policy, in the absence of special stipulations to the contrary, will cover and protect that interest.

3. ——— STIPULATIONS CONSTRUED. A policy of insurance contained the following condition or stipulation: "And in case of any *sale, transfer or change of title* in the property insured, * * * * such insurance shall be void and cease," &c. *Held,* 1. (By two of the judges) That a merely nominal transfer, as collateral security for debts which were subsisting liens on the property, did not avoid the policy. 2. (By one of the judges) That a transfer of the title of the assured, absolute upon its face, avoided the policy *ipso facto,* without respect to the purpose for which it was made. 3. (By three of the judges — COLE, J., taking no part) That a transfer which would increase the temptation on the part of the assured to defraud the underwriter, or lessen his interest in preventing a destruction of the property by fire, would avoid the policy.

4. Notice: KNOWLEDGE OF AGENT. Mere knowledge by an agent of an insurance company of acts which would avoid a policy issued by his principal, without objection thereto, does not bind the company.

5. Evidence: PLEADING: ADMISSIONS. An answer filed for a defendant, over the signature of his attorney, is admissible in evidence in another action, as an admission of the allegations therein set out. Its weight, as evidence, must be determined by the jury.

6. Practice: NONSUIT. The Supreme Court will not, for any supposed or technical error in overruling a motion for a nonsuit, reverse a judgment, which was rendered in a trial upon the merits, after the ruling of the court upon the motion.

7. Insurance: TRUST PROPERTY: POLICY CONSTRUED. A condition in a policy of insurance provided, "that property held in trust or on commission, must be insured as such, otherwise the policy will not cover such property. * * * * By property held in trust is intended property held under a deed of trust, or under the appointment of a court, or held as collateral security." *Held,* that holding property in secret trust, to defraud the creditors of the real owner, was not such a holding in trust as was contemplated by the condition — that if held as a security for a debt, it would be within the condition.

8. ——— MISREPRESENTATIONS: ACTS OF AGENT. When the agent of an insurance company has authority only to receive and forward applications for insurance, parol evidence is not receivable to show that the agent failed, in writing the application, to take down the statements made by the applicant, or changed them. But if the agent is empowered to pass upon,

and did pass upon the risk in question, without submitting it to his principal, and failed to correctly take down the facts stated by the applicant, in ignorance of which the application was signed, in the absence of any stipulation in the policy to the contrary, the principal is estopped from asserting that he has been misled by the representations of the application.

9. —— PROOF OF LOSS. A policy of insurance contained a condition, requiring "all persons insured by the company to deliver a particular account of loss or damage, signed by *their own hands*, containing," &c., &c. *Held*, that notice by a third person for the insured, such person being interested in the policy but not an agent of the insured, was not sufficient.

10. —— WAIVER OF DEFECT IN NOTICE. While mere silence will not amount to a waiver of defects in proof of loss, an objection to the proofs upon one specific ground and silence as to another in which was the real defect, operates as a waiver of such defect.

· *Appeal from Polk District Court.*

FRIDAY, OCTOBER 14.

ACTION ON POLICY OF INSURANCE. On the 11th day of December, 1860, the defendant issued its policy, agreeing to insure the plaintiff, "John Ayres, for one year, against loss or damage by fire, to the amount of $3,000, on his steam flouring mill and machinery, situate," &c., "loss, if any, payable to B. F. Allen, Esq. (a judgment creditor of Wm. F. Ayres & Co.), to the entire amount of his claim against Messrs. Wm. F. Ayres & Co., at the time such loss may occur, and the balance, after such claim is paid, payable to John Ayres." A like insurance for $5,000, was effected about the same time in the Home Insurance Company, of which defendant had notice. On the 14th day of June, 1861, and within the time covered by the policy, the mill was consumed by fire. The defendants, "in virtue of certain equities existing between Allen and themselves, and distinctly denying all legal obligation to him or to John Ayres," on the 2d day of September, 1861, paid Allen $1,125, on account of the loss under said

policy — that being the defendant's proposition, as between it and the Home Company, of Allen's judgment against Wm. F. Ayres & Co. This action is brought by the plaintiff, John Ayres, on the policy, to recover the balance remaining after the payment to Allen. Various defenses were interposed, such as willful burning by the assured or his agents, false representations as to value of property, misrepresentations and concealments as to title, &c.; want of insurable interest at the time the insurance was effected; want of title in the plaintiff at time of loss, &c. Various exceptions were taken on the trial to the rulings of the court, relating to evidence and to instructions. These matters, so far as necessary, will be set forth in the opinion. The paper history of the title to the premises on which the mill was situate, and which it is necessary to understand, is as follows:

One Edwin Hall was the original owner of the land on which the mill stood, and never parted with the legal title. Under date of the 26th day of July, 1856, he executed to Wm. F. Ayres a title bond therefor, conditioned to make him title, on the payment, on or before the first day of March, 1862, of the sum of fifteen hundred dollars, with interest at ten per cent, payable annually, and on the payment of taxes. This bond was acknowledged July 7th, 1860, by Hall, and was a renewal of the original bond, the time being extended to enable an insurance to be effected. In 1856 or 1857, after the contract for the purchase of the land of Hall, Wm. F. Ayres & Co. erected thereon the mill in question. On the 10th day of January, 1860, by instrument acknowledged July 7th, 1860, Wm. F. Ayres, the vendee named in the title bond, assigned the said bond to the plaintiff, John Ayres, who it seems, resided in Ohio, and who was, according to the terms of the assignment (which, however was signed by Wm. F. Ayres alone), to pay the balance

due on the bond. This amounted to over $2,300, to recover which, Hall, in March, 1862, commenced suit against John Ayres in the Polk District Court. Whether he recovered in that action, or even received his pay, does not appear. On the 21st day of January, 1861, after policy and before fire, the following assignment was made on the said title bond: "For value received, I assign all of my right, title and interest to the within bond, and to lot No. 5, &c. (describing the property on which the mill was situate), to B. F. Allen, this January 21st, 1861. (Signed) JOHN AYRES." The bond, with the assignment, was delivered to Allen before the fire. November 14th, 1860, the mill property was sold, to one Redhead, on execution, in favor of B. F. Allen, against Wm. F. Ayres & Co., and certificate of sale issued, which was assigned to Allen. This sale, it will be seen, was prior to the date of the policy, but after the date of the assignment of the title bond from Wm. F. to John Ayres. The date of Allen's judgment does not appear, but it is presumed that it was prior to the last named assignment. Allen never obtained a sheriff's deed; and never credited the amount received of the defendant on the judgment, but admitted, on the trial, that he recognized his obligation to do so, and intended to do so.

Verdict and judgment being rendered for the plaintiff, the defendant appeals.

*Finch, Clarke & Rice* for appellants.

*S. V. White* for appellee.

DILLON, J. — The record and argument in this cause cover hundreds of pages. We will discuss the many questions arising, with all possible brevity consistent with clearness.

Ayres v. The Hartford Fire Insurance Company.

I. Assuming·that the plaintiff was the holder, by assignment, from Wm. F. Ayres, of Hall's title-bond to the latter, it is plain that he had an insurable interest in the premises at the time when the insurance was effected, December 10th, 1860. The debt to Hall, under the extension of time, was not then due. Valuable improvements had been made upon the land by Wm. F. Ayres, after the purchase from Hall. To all this the plaintiff was entitled, by virtue of the assignment of the title-bond to him, on the payment of the purchase-money when due, subject, of course, to the claim of Allen, and possibly to other liens. By the assignment to him, he agreed to pay the purchase-money debt to Hall. This liability would remain, notwithstanding the destruction of the mill by fire. It is most obvious, therefore, that he would suffer damages if the will should burn. Possession of property under a subsisting executory contract, which may result in title or ripen into ownership, constitutes an insurable interest, whether the purchase-money is paid or not, and will justify a recovery to the extent of injury sustained. *Columbian Inusrance Company* v. *Lawrence*, 2 Pet., 25 ; *S. C.*, 10 Pet., 507 ; *McGivney* v. *The Phœnix Fire Insurance Company*, 1 Wend., 85 ; *Ætna Fire Insurance Company* v. *Tyler*, 12 Wend., 507 ; *S. C.*, 6 Id., 385 ; 2 Am. Lead. Cases, 397, and authorities there cited.

II. One of the conditions of the policy of insurance in suit was in the following words: "And in case of any sale, transfer, or change of title in property insured by this company, or of any undivided interest therein, such insurance shall be void, and cease ; and the entry of a foreclosure of a mortgage, or the levy of an execution, shall be deemed an alienation of the property."

Based upon this clause or condition in the policy, the answer sets up the following defense, viz.: "That, subsequently to the date of the policy, and prior to the destruc-

*Marginal notes:*
1. Insurance: insurable interest.
2. —— Continuing interest.

tion of the mill by fire, to wit: in the month of January, 1861, the plaintiff executed an unqualified conveyance of all his right, title, and interest in and to the said steam flouring mill, to one B. F. Allen, whereby the said policy became void, and the defendant avers that it had no knowledge of such transfer until after said fire." It is further alleged that, at the "time of the fire, the plaintiff had no insurable interest in the property, no *bona fide* interest, no title, legal or equitable." As will be seen by the statement, the plaintiff, after the date of the policy, and before the loss, viz.: January 21st, 1861, made an assignment, absolute on its face, of "all his right, title and interest" in the Hall title-bond, to B. F. Allen, the judgment creditor named in the policy of insurance, who was first to be paid in case of loss. Wm. F. Ayres swore on the trial that this assignment to Allen was signed by John Ayres himself. It was shown by Allen's testimony, that Wm. F. Ayres told him he could get the bond assigned to him, and brought it back afterwards with the plaintiff's signature to the assignment of January 21st, 1861. That this bond was in Allen's possession at the time of the fire, with this assignment upon it, is an undisputed fact in the case. Allen testified that he never executed to John Ayres any agreement to reassign the bond; but that he took and held the bond "as collateral, to secure him in case he paid the balance due on the bond to Hall, and also the better to secure him in his judgment against Wm. F. Ayres." As to the purpose for which he held the bond, Allen made substantially the same statement in the "proofs of loss" required by the policy. He also stated that, at the time of the fire, Wm. F. Ayres & Co. owed him $4,866.13. Whether this was the whole amount of his judgment against Ayres & Co., or the amount due less the credit of $3,745, by the sale of the mill and other property, Nov. 14th, 1860, does not appear in the record before us. Under

this state of facts, some difficult questions of law arise, under the special provisions of the policy in suit. John Ayres, as we have seen, had an insurable interest at the time the insurance was effected. But this alone is not sufficient. As the contract of insurance is a personal one, not running with the land, the insured must have an interest in the property destroyed at the time of the loss. This has been settled ever since the early cases of *Lynch* v. *Dalzell*, 3 Bro. P. C., 479, and *Sadler's Company* v. *Babcock*, 2 Atk., 554. (See also 3 Kent Com., 371 ; Angell on Ins., § 193; *Dix* v. *Insurance Companies*, 22 Ill., 276.) " If, therefore, the assured," says SHAW, C. J., in *Wilson* v. *Hill*, 3 Met., 66, " has *wholly parted* with his interest before the premises are burnt, and they are afterwards burnt, the underwriter incurs no obligation to pay anybody. The contract was to indemnify the assured : if *he* has sustained no damage, the contract is not broken." *Howard* v. *Albany Ins. Co.*, 3 Denio, 301. *Prima facie*, therefore, the assignment by the plaintiff to Allen, of his title-bond and of all his rights therein, left him without any interest in the property covered by the policy, and consequently without any right to recover for the loss or destruction of it. To rebut this, the plaintiff offered the evidence of Allen as to the purposes for which he held the assignment of the title-bond; to show that, though absolute and unconditional in form, it was, nevertheless, taken by him as collateral security for his debt against Wm. F. Ayres & Co., and contingently as security for any amount which he might have to advance to Hall to secure the title. Whether parol proof of this kind would have been admissible, is not a question before us, for the reason that no objection by the defendant was made to its introduction. See *Hodges* v. *Tennessee Marine and Fire Insurance Company*, 4 Seld., 416.

We are to take it then, as established, that Allen only held the bond as security, and that the plaintiff, subject to the specified purposes for which it was assigned to Allen, was the real owner of it. If so, he would still retain an interest in the property. If it should burn, he would still remain liable to Hall, according to the terms of the assignment by which he acquired his rights. If it should not burn, he would be entitled to a deed for the property, on payment to Hall and Allen. Agreeably to the principles above laid down, if the assured aliens the property wholly, and retains no interest therein, the policy, as to him, is at an end; but if an interest is still retained, the policy, in the absence of special stipulations to the contrary, will cover and protect that interest. This is reasonable in principle, and plain upon the authorities. Angell on Ins., § 193, and cases there cited.

Defendants claim that there were special stipulations to the contrary which avoided the policy, notwithstanding the 3. —— stip- plaintiff may have remained, after the assignment ulations construed. to Allen, equitably interested in the property. The stipulation or condition relied on for this purpose, is the one above quoted, viz.: " And in case of any *sale, transfer*, or *change of title* in the property insured, \* \* \* such insurance shall be void, and cease," &c. Under the parol testimony which was received without objection, it cannot be contended that the assignment of the bond to Allen, was a *sale* of the property to him. The transfer of the bond to Allen was in the nature of a mortgage, first, to secure the debt of another, viz., Wm. F. Ayres & Co., and secondly, to secure plaintiff's own debt to Hall (made *his* by accepting the assignment of the bond from Wm. F. Ayres), provided Allen should pay it. Now, unless expressly so provided by the policy, a mortgage is not considered as an " alienation " or " sale," so as to avoid the insurance, unless it may be in the case of mutual insurance

companies. *Rollins* v. *Columbian Insurance Co.*, 5 Fost., 200; S. P., 38 N. H., 232; *Lazarus* v. *The Commonwealth Insurance Co.*, 5 Pick., 81; *Conover* v. *The Mutual Insurance Co.*, 3 Denio, 254; *S. C.*, 1 Comst., 290; Angell on Ins., § 205; and see Littleton & Blatchey's Insurance Digest (a valuable work, most faithfully and conscientiously prepared), Tit., "Alienation," for further authorities on this point. The reason is, that a *sale* or *alienation* contemplates an absolute transfer of the title and ownership to another, whereas a mortgage only creates a lien for the security of the stipulated debt or engagement. This is especially so under our statute. The difficulty arises upon the construction of the additional words, "*transfer* or *change* of *title*." These mean more than a "*sale*," else why are they added? Is *title* here used as synonymous with ownership, and must the *actual* ownership change in order to avoid the policy? or is the policy avoided, if the form or *evidence* of the title is changed, provided the actual and the real ownership remains the same? One member of this court cannot take part in the settlement of this question, and the others are not entirely agreed as to the true construction of this clause. Words of doubtful meaning, or susceptible of two fair interpretations, should, especially in view of the well known fact that insurance companies frame the contract, be construed to uphold, rather than avoid the policy (*Wilson* v. *Conway Insurance Company*, 4 R. I., 156); and, on this principle, two of the three judges taking part in this decision, are of the opinion, that the *change* or *transfer* of *title*, to be in violation of the policy, must be more than nominal. The object of the insurance company, by this clause, is that the interest shall not change so that the assured shall have a greater temptation or motive to burn the property, or less interest and watchfulness in guarding and preserving it from destruction by fire. Any change in, or transfer of the interest of the assured in the property of a nature cal-

culated to have this effect, is in violation of the policy. But if the real ownership remains the same — if there is no change in the *fact* of *title*, but only in the evidence of it, and if this latter change is merely nominal, and not of a nature calculated to increase the motive to burn, or diminish the motive to guard the property from loss by fire, the policy is not violated. Apply these principles to the case in hand. It does not appear *when* the judgment of Allen was rendered. If rendered before the assignment of the title-bond from Wm. F. Ayres to the plaintiff, then the judgment was a *lien* on the *whole* property for the *whole* amount, and was a lien prior to the plaintiff's claim. The transfer of the bond to Allen by the plaintiff could not, under such circumstances, give Allen any more or greater rights than he before had, nor take away from the plaintiff any of his rights. It would be equitably, really and substantially no change or transfer of the title. But if Allen, before the insurance, had caused the mill to be sold on his judgment, for, say $1,500, and if the plaintiff, after the insurance, and before the assignment of the bond by him to Allen, could have redeemed the property, and freed it from Allen's claim by paying that amount, then if he assigned the bond to Allen as security for a much *greater sum*, owing not by himself, but by *another*, it seems clear that his interest in the property would be *changed*, as he would then be placed under more temptation to defraud the underwriters, or, at least, have less interest in preventing the destruction of the property by fire. Such a change, we are all agreed, would avoid the policy ; and one member of the court, WRIGHT, Ch. J., is of the opinion that the transfer of the bond to Allen, being absolute on its face, avoided the policy *ipso facto*, irrespective of the question whether it increased Allen's rights, or diminished those of the plaintiff. The majority, however, are of the opinion above indicated, but as the record does not enable us to

ascertain the facts, and as the judgment must be reversed for other reasons, we can only lay down the *principles* that apply, and should govern, with respect to this question, on a second trial. Favoring the majority view, see *Shepherd* v. *Union Mutual Insurance Company*, 38 N. H., 232, and against it, at least partially, see *W. M. Insurance Company* v. *Riker*, 10 Mich., 279. The cases cited by the appellants of a transfer from one tenant in common, to the other, or from one partner to his copartner of his whole interest in the property insured, do not touch the above question.

We attach no importance to the fact that Hussey (the local agent of the defendants, and the clerk of Allen), 4. NOTICE: knew of the assignment from the plaintiff to knowledge of agent. Allen, and did not object thereto. He was not asked to consent to that assignment. It is not shown that he had power to waive the express condition of the policy as to the effects of such a transfer. So far as the instructions of the court assumed or stated, that if Hussey knew of this assignment, *as agent* of the defendant, and did not object thereto, this knowledge and failure to object, would prevent the transfer from avoiding the policy, they were erroneous. (See change of defendant's instruction, Nos. 3, 8, 10, 23, and others.) *Keenan* v. *Dubuque Mutual Fire Insurance Company*, 13 Iowa, 375; *Forbes* v. *Agawam Mutual Fire Insurance Company*, 9 Cush., 470, 473.

III. We must dispose of the less important questions briefly. Hall sued John Ayres (the present plaintiff) on the 5. EVI- title-bond in question, alleging the assignment of DENCE: pleading: January 10th, 1860, and the condition that he, admissions. John Ayres, should pay the same, &c. Ayres filed an unsworn answer, denying from beginning to end every averment in the petition of Hall, and, among other allegations, denied that the bond had been assigned to him, or that he had any interest therein. This answer

was signed thus: "C. C. Cole, attorney for defendant, per Bartle." As an *admission* of the defendant in that suit, it was competent evidence against him in this suit. (See authorities cited by appellant's counsel.) The presumption is, that it was filed by his authority. This was not rebutted, and the court erred in rejecting it. The weight would be for the jury.

IV. When plaintiff closed his evidence, defendant made a motion for a nonsuit, because of an alleged failure to 

6. PRAC-  make on some points the necessary proof. This
TICE:
nonsuit.  motion was overruled, and the defendant then went on and introduced his evidence; and the plaintiff then adduced further evidence. The cause having afterwards been fully tried on its merits, we would not reverse the judgment for any supposed or technical error in the ruling on the motion for a nonsuit.

V. As to the alleged misrepresentation as to the state of the title, or failure to disclose the true state of the title,

7. INSUR-  a few observations may be required, in case the
ANCE:
policy con-  cause is again tried. Section third of the con-
strued, etc.  ditions of insurance provides that "property held in trust, or on commission, must be insured as such; otherwise the policy will not cover such property. By property held in trust is intended property held under a deed of trust, or under the appointment of a court, *or property held as collateral security.* If the interest in the property to be insured be a leasehold interest, or any other interest *not absolute,* it must be so represented to the company and *expressed in writing,* otherwise the insurance shall be void." It is claimed by the appellants that the title to this property was put into John Ayres, the plaintiff, by Wm. F. Ayres & Co., to defraud their creditors, and that the plaintiff holds it, therefore, in secret trust for Ayres & Co. This is not such a holding in trust as is contemplated by the above

Ayres v. The Hartford Fire Insurance Company.

condition. If the plaintiff held it as security for a debt, it would be otherwise.

Again, it is claimed that the plaintiff's interest not being absolute, and the contrary not being expressed in writing, the insurance is void. In the body of the policy the mill is described as the plaintiff's, the insurance being upon "*his* steam flouring mill and machinery." In the application for insurance, which is made by the policy part thereof, and a warranty, the following question occurred: "What incumbrance, if any, is there on said property? If mortgaged, state the amount. Is there any insurance by the mortgagee?" The applicant (W. F. Ayres) answered as follows: "Property in the name of John Ayres, subject to a payment of $1,500, purchase-money for ground where located, has been sold at sheriff's sale to satisfy a judgment creditor of Wm. F. Ayres & Co. Insurance payable to him (B. F. Allen, the judgment creditor), first to amount of claim, balance payable to Ayres & Co." Evidence was offered, tending to show that Hussey, the local agent of defendant, filled up the application, which was afterwards signed by Wm. F. Ayres for Wm. F. Ayres & Co. Allen testified, against defendant's objection, that "Hussey was told by Wm. F. Ayres, as near as witness could recollect, that Wm. F. Ayres & Co. held a title bond for a deed from Edwin Hall, and that the bond was assigned to John Ayres; that Mr. Hall still had the legal title, and the amount due on the bond was stated at the time."

The defendant, with reference to these matters, asked the following instruction: "If the jury find from the evidence, that there was a material misrepresentation in regard to the value of the property insured, or in any other material respect, in the application for insurance made by Wm. F. Ayres & Co., the policy issued upon such application was void for such misrepresentation." To which the court

*8. —— Misrepresentation: acts of agent.*

added, "But if the jury believe from the evidence, that the said Ayres & Co. represented the facts as they existed, and the agent of defendant did not so take them down, but changed them so that such statements are not correctly stated in the application, then such change was wrongful in the defendant, and they cannot take advantage thereof." Amid the conflicting decisions on this and kindred points, as to the effect of the acts and knowledge of agents, we think the correct rule, as applied to this case, is this: If Hussey, the local agent, had authority only to receive and forward applications for risks of this kind, and did receive and forward this application for Wm. F. Ayres & Co., parol evidence would not be receivable to show that the agent failed to take down the statements or changed them. When the application was signed to be forwarded, the applicant made it his own. If, on the other hand, the local agent had the power to pass upon, and did pass upon the risk in question without submitting it to his principal, and failed correctly to take down the facts stated by the applicant, in ignorance of which the application was signed, there is nothing in the *policy in suit*, as there is nothing in reason and justice to prevent the defendant from being estopped, and he is estopped from objecting that he has been misled by the representations of the assured. This policy contains no stipulations such as are contained in some policies (See *Chase* v. *The Hamilton Insurance Company*, 20 N. Y., 52; *Jenkins* v. *The Quincy Mutual Fire Insurance Company*, 7 Gray, 370; *Jennings* v. *Chenango Insurance Company*, 2 Denio, 75; 17 Mo., 247), that the insurer shall not be bound by the acts or knowledge of the agent, or by statements made to or by any agent. In support of the principles above laid down, see *Hough* v. *City Insurance Company*, 29 Conn., 10; *Plumb* v. *Cattaraugus County Mutual Insurance Company*, 18 N. Y., 392; and *Moliere* v. *Pennsylvania Insurance Company*, 5 Rawle, 342, in each of which insur-

ers were held estopped or bound by acts of agents with reference to applications. *Wilson* v. *Conway Insurance Company*, 4 R. I., 141; *Chaffee et al.* v. *Cattaraugus County Mutual Insurance Company*, 18 N. Y., 376; Id., 385, where the insurer was not held bound, where the agent had power only to receive and forward applications. On the contrary, the Massachusetts cases make it the duty of the assured, in all cases, to see that the application is correct, the agent of the insurance company being, as respects the receiving and filling up of applications, the agent of the applicant. *Lowell* v. *Middlesex Mutual Fire Insurance Company*, 8 Cush., 127, 133; *Vose* v. *The Eagle Life and Health Insurance Company*, 6 Id., 42; *Forbes* v. *The Agawam Mutual Fire Insurance Company*, *supra*; *Lee* v. *The Howard Fire Insurance Company*, 3 Gray, 583.

VI. The contract of insurance in this case, is made with the plaintiff, and not with Allen. *Lowell* v. *Middlesex Insurance Company*, 8 Cush., 127. This is so, notwith-

9. —— Proof of loss. standing the provision in the policy, that Allen is to be first paid to the extent of his claim. One of the conditions attached to, and forming part of the policy, requires "all persons insured by the company to deliver a particular account of loss or damage, *signed by their own hands*," containing, &c. "And until such proofs, &c., are produced by the claimant, the loss shall not be payable." The preliminary proof of loss was made by Allen, who stated at the conclusion, "that plaintiff was a non-resident of Iowa; was ignorant of the fire, and that he makes this proof both for John Ayres and himself." As to the claim of the *plaintiff* under the policy, it is plain that the company would ordinarily be entitled to have his oath as to the matters required by the policy to be set forth in the proofs of loss; but if the assured is non-resident, and has an agent in charge of his premises, on account of which the loss is claimed, we see no reason why the proof

may not be made by him. Certainly this would be sufficient, if not objected to for that reason.

In this case, Allen did not pretend to any prior direct authority to make the proof for the plaintiff, and was not his agent. And the proof made by him would not be sufficient in favor of the plaintiff, unless it was waived by the insurers. *Mason* v. *Harvey*, 8 W. H. & G., 819. Mere silence will not amount to a waiver of defective proofs of loss. *Keenan* v. *Dubuque Mutual Insurance Company*, 13 Iowa, *supra*; but if the company or its authorized agents made no objections to the proofs, because not made by the plaintiff in person, but placed their refusal to pay upon other specific and distinct grounds, the defendant cannot defeat the action, if the plaintiff is otherwise entitled to recover, by bringing forward at the trial, objections not insisted upon at the time. *Tayloe* v. *Merchants' Insurance Company*, 9 How., 390; *Hartford Insurance Company* v. *Harmer*, 2 Ohio St., 452; *Peacock* v. *New York Insurance Company*, 1 Bosw., 338; *Wyman* v. *People's Equity Insurance Company*, 1 Allen, 301; *Peoria Marine and Fire Insurance Company* v. *Whitehill*, 25 Ill., 466; *Bodle* v. *Chenango County Mutual Insurance Company*, 2 Comst., 53. The third and fourth instructions to the jury, given by the court on its own motion, seem to accord with the above views, and were not erroneous.

For the error of the court, as pointed out in the latter part of the second division of the above opinion, with respect to the effect of Hussey's knowledge, and his failure to object to the transfer of the bond to Allen, and for the errors set forth in the third and fifth divisions of the foregoing opinion, the judgment below is reversed, and the cause remanded for a new trial.

Reversed.

COLE, J., having been of counsel, took no part in the consideration of this case.