RALPH HICKS ET AL., Respondents, v. THE EMPIRE INSURANCE COMPANY, Appellant.

### November 26, 1878.

1. An insurance policy contained a stipulation that should "petroleum or its products" be kept on the steamboat insured the policy should be void. In an action on the policy, testimony was given tending to show that "mineral sperm-oil," the name of the oil used in lighting the boat, was a fancy name. A witness, being shown a bottle containing a fluid called "mineral sperm-oil," was asked whether the odor of the oil indicated the presence of petroleum, no connection 'between the oil used on the boat and that exhibited to the witness being shown. *Held*, that the exclusion of this testimony was proper.

2. Where the insurer objects to the proofs of loss on the ground that certain particulars are not furnished, and that the proofs are made by an agent and not by the owner, and states that when the corrections are made the proofs will be received, it being known at the time of this promise to be physically impossible to have the corrections made and the proofs returned within the time required by the policy, if the assured, relying on the promise, complies with the insurer's demands in the shortest possible time,

and fulfils all the required conditions, except that the corrected proofs are not furnished until after the expiration of the thirty days limited in the policy, this is a substantial compliance with the terms of the policy respecting proofs of loss.

APPEAL from St. Louis Circuit Court.

*Affirmed.*

J. M. & C. H. KRUM, for appellant: As to the sufficiency of proofs of loss. — *St. Louis Ins. Co.* v. *Kyle*, 11 Mo. 289; *Noonan* v. *Hartford Ins. Co.*, 21 Mo. 81; *Sims* v. *State Ins. Co.*, 47 Mo. 59; *German Bank* v. *Studley*, 1 Mo. App. 260; *Cole* v. *Long*, 1 Mo. App. 215; *Worsley* v. *Wood*, 6 Term Rep. 710; *Johnson* v. *Phœnix Ins. Co.*, 112 Mass. 49; *Underwood* v. *Farmers' Ins. Co.*, 57 N. Y. 500.

GIVEN CAMPBELL, for respondents: Proofs of loss. — *Russell* v. *Insurance Co.*, 55 Mo. 585; *Tinsley* v. *Insurance Co.*, 23 Wend. 377; *Insurance Co.* v. *Steamer*, 11 Mo. 278; *McLaughlin* v. *Insurance Co.*, 23 Wend. 525. A substantial compliance with the requirements of the policy as to such proofs is sufficient. — *Sims* v. *Insurance Co.*, 47 Mo. 54; *O'Conner* v. *Insurance Co.*, 31 Wis. 160; *Bartlett* v. *Insurance Co.*, 46 Mo. 500. Waiver. — *Schenck* v. *Insurance Co.*, 24 N. J. 447; *Clark* v. *Insurance Co.*, 6 Cush. 342.

LEWIS, P. J., delivered the opinion of the court.

Plaintiffs sue upon a policy of insurance, in the sum of $2,500, against loss by fire on their steamboat "Mary Belle," which was burned at the Vicksburg landing, on February 27, 1876. The Circuit Court gave judgment for the plaintiffs; from which the defendant appealed.

A stipulation in the policy was as follows: "If the assured shall keep * * * petroleum or its products, by whatever name designated, without written permission in this policy, then, and in every such case, this policy shall be void." The testimony tended to prove that an article

called "mineral sperm-oil" was used in lighting the boat. One of the witnesses testified that he was a manufacturer and dealer in linseed and chemical oils, and that, according to his understanding, "mineral sperm-oil" was a fancy name for one of the products of petroleum. On cross-examination, he said that he had never made the article, and did not know what were its ingredients, and that he was not a chemist. His only knowledge on the subject was derived from the statements of manufacturers. No other testimony was introduced to show of what materials mineral sperm-oil was composed. The jury were instructed that if they found from the evidence that mineral sperm-oil was used as charged, and further that such oil was a product of petroleum, their verdict must be for the defendant. Their finding, consequently, upon the question of fact leaves nothing in this connection for our review, unless there was error in the admission or exclusion of testimony.

The defendant offered to introduce a vial of mineral sperm-oil for examination by the jury, and also desired the witness to state what was indicated, as to the presence of petroleum, by the odor of its contents. Both these forms of testimony were, upon the plaintiffs' objection, excluded by the court. The defendant claims that this was error.

It was not pretended that the contents of the vial produced by defendant were taken from the stock of oil which was in use on the boat. No connection whatever existed between the two articles, except in their common name. As this was said to be a "fancy name," it might have been applied by different manufacturers, or even by the same manufacturers, to very different compounds. Nothing could fairly be determined upon the question at issue from a mere inspection of the fluid. Its appearance would give no certain information, even to the eye of a chemist. Its odor might announce the presence of petroleum, but whether as the base of the product or as a mere ingredient no jury could be able to say. A chemical analysis would

be the best, and therefore the only admissible, evidence of the composition of the article produced ; and even then the question would remain whether it was identical with the fluid that was used on the boat. No precedent is furnished in the case of *Williamson* v. *Fischer*, 50 Mo. 198, cited by counsel. There the map offered in evidence was of a survey actually made upon the land in controversy, and not upon another tract known by the same name or having a similar general description. The proposed testimony was too remote and inconclusive for that certainty and precision which should always control judicial investigation. There was no error in its exclusion.

Defendant contends that the plaintiffs failed to comply with the following stipulation in the policy : " Persons sustaining loss or damage by fire shall forthwith give notice of such loss to the company in writing, and, within thirty days after the loss shall have occurred, render a particular account of such loss, signed and sworn to by them, stating whether any and what other insurance has been made on the same property, giving copies of the written portions of all policies thereon, and the cash value of the property and their interest therein ;   *   *   *   and shall also produce a certificate, under the hand and seal of the magistrate or notary-public nearest the place of the fire, stating that he has examined the circumstances attending the loss, knows the character and circumstances of the assured, and verily believes that the assured has, without fraud, sustained loss on the property insured to the amount which such magistrate or notary-public shall certify."

It appeared from the testimony that the boat was owned by the plaintiffs, Ralph Hicks, Alfred Grissom, and Richard Guinnot. The policy was issued to "Ralph Hicks, for account of owners." The loss occurred on February 27, 1876. J. F. Hicks, the father of Ralph, was captain in charge of the boat, but owned no interest in her, and the plaintiff Grissom was her clerk.

Grissom was present at the fire, but the captain had gone temporarily up into the city of Vicksburg, where the boat lay. On the day after the fire, a protest setting forth the facts of the loss, with the leading particulars, was subscribed and sworn to by Capt. Hicks, the plaintiff Grissom, and other officers of the boat. The other owners, it appears, were not present, and were residing in Tennessee.

Authentic copies of the protest were sent to all the insurance companies — eighteen in number, including the defendant — against whom policies were held by the owners. The defendant then objected to the protest for insufficiency under the terms of the policy. It does not clearly appear from the bill of exceptions that, at this stage in the proceedings, the defendant pointed out specifically its objections to the protest as a proof of the loss. On March 21st, Capt. Hicks went to the office of the local agents of defendant in St. Louis, who produced printed forms for proofs of loss, and caused them to be filled up under their direction and to be signed by Capt. Hicks, who had been furnished with a special power of attorney for the purpose by the owners. The proofs thus prepared were sent to the home office of defendant, in Illinois. On March 24th, defendant responded in a letter from its secretary to Capt. Hicks, objecting specifically to the proofs, on the ground that Capt. Hicks had no ownership or interest in the property destroyed, and was not authorized to make proofs that would be binding on the defendant. The letter proceeded to say : "But if you have the right above mentioned, the proofs are defective in the following particulars : 1st. The copies of written portions of other policies covering the boat are not given. 2d. Certificate of the notary or magistrate nearest the fire are not produced, as required. * * * If you conclude to correct the proofs by additions, as stated, we will receive them under protest that you are not authorized to make proofs, by reason of your want of interest in the subject-matter of insurance." On March 30th,

another set of proofs was prepared, and was signed by Ralph Hicks,· the owner, and sent to the home office of defendant on April 3d. On April 25th, additional proofs, subscribed by Ralph Hicks and including every thing that had been required by defendant, were prepared and sent to the home office, whence the response came that the proofs were too late, and the company would decline payment of the loss.

It is settled that the stipulation in a policy prescribing the time and the methods of proof, in case of a loss, are conditions precedent, whose substantial fulfilment is essential to any obligation of payment on the part of the insurer. It is also settled that the insurer may, by various acts and declarations, waive a compliance with such stipulation.

The defendant's first objection to the proofs offered in this case, within the thirty days stipulated for in the policy, is founded upon the fact that they were not made by one of the parties assured. The general doctrine is that the insurer has the right to purge the conscience of the assured, who is supposed to know not only his own loss, but also any secret reason why he should not be paid.

But exceptions have been recognized in cases where the owners were absent or non-resident, and the property insured was under the care, custody, and· management of agents when the losses occurred. In such cases it is considered that if the proofs cannot be made by the agent, they cannot be made at all. It is impossible for the owner to make a sworn statement, from his own knowledge, of the particulars of the loss. The insurer cannot be heard to demand a literal fulfilment which he knows to be impossible in the nature of things. A substantial compliance with the stipulation is all that can be required; and this, in the case supposed, is provided in the proofs, if otherwise sufficient, as sworn to and presented by the agent. *Sims* v. *Insurance Co.*, 47 Mo. 54; *Ayres* v. *Insurance Co.*, 17 Iowa, 176; *O'Conner* v. *Insurance Co.*, 31 Wis. 160. In two of

the cases just cited, the absence of the owners respec-
tively was of a more permanent character than in the
case before us, and there were other circumstances tending
to make the case stronger than the present.   But the prin-
ciple is the same, and seems to find here a fitting applica-
tion.   Capt. Hicks had the boat in his charge, custody,
and management at the time of her destruction.   He was
not present at the fire, but was in the immediate vicinity,
and appeared on the spot immediately afterwards, while all
the incidents of the scene were freshly upon the lips of the
observers.   The owners were in a distant State, and could
not even know that their boat was burned, except from
information at second-hand.

It is unnecessary, however, to decide in this case that
Capt. Hicks was the proper person to make the proofs of
loss.   The relation in which he stood to the property and its
owners, and the proofs made by him, which were prepared
under the direction of defendant's agents, taken together,
were at least sufficient to give his action the character of an
honest attempt to comply with the requirements of the
policy.   This put the plaintiffs in a more advantageous
position than they could have held if they had made no
effort whatever, through an agent or otherwise, in that
direction.   In *Lampkin* v. *Ontario Marine and Fire Insur-
ance Company*, 12 Upper Canada (Q. B.), 578, the plaintiff
had made a defective attempt to prove his loss, and had also
presented it too late under the terms of the policy.   The de-
fendant, instead of objecting on the score of time, entered
into a correspondence with the plaintiff as to furnishing bet-
ter particulars of the loss.   It was held that when the better
particulars were afterwards furnished, the defendant could
not then object that the proofs were presented out of time.
This ruling harmonizes with a uniform series of adjudica-
tions, in which it is held that, where the insurer specifies
one or more formal defects in the proofs furnished and is
silent as to others, this operates as a waiver as to those not

mentioned. *Ayres* v. *Hartford Ins. Co.*, 17 Iowa, 176; *McMasters* v. *Insurance Co.*, 25 Wend. 379; *Taylor* v. *Insurance Co.*, 9 How. 390; *Insurance Co.* v. *Tyler*, 16 Wend. 385; *Hartford Ins. Co.* v. *Harmer*, 2 Ohio St. 452. A proper application of the principles to the present case is fatal to the defence. As in the case of *Lampkin* v. *Insurance Company*, *supra*, the letter from defendant's secretary, of March 24th, was silent as to any question of time. It plainly invited a compliance with certain requirements, and gave notice that when these were fulfilled the only exaction to be further pressed would be that the proofs should come from an owner, and not from the agent. This was the practical meaning of the concluding sentence. It may be argued that, as the time limited for furnishing the proofs had not then expired, the defendant could not be expected to raise an objection on that score. But for all practical purposes the time originally allowed for the additional proofs invited was already exhausted. As it was leap year, the period of thirty days from the date of the loss would expire on March 28th. Allowing one day for the transmission of the letter from Chicago to St. Louis, there were left but three days in which to procure from Vicksburg the magistrate's certificate, and to send this, with copies of the written parts of the other policies, to the defendant's office in Chicago. Such an achievement was physically impossible, and was of course known so to be by defendant. Are we to suppose that, while defendant was inviting the additional proofs, there was a secret reservation that they should be of no avail when furnished? To permit the defendant to hold out a promise, in effect, that if certain particulars were furnished, no further objection would be made except one to the personality of the party presenting them, and then, when not only is every condition fulfilled, but the personal objection is removed also, to fall back upon an obstacle that is equally patent before and after the making of the promise, would be to violate every principle of fairness which courts are

accustomed to recognize in the settlement of such controversies as the present.

There was testimony tending to show that the additional proofs required by defendant were procured and furnished in as short a time as was possible, under all the circumstances, after the demand. The court instructed the jury that if they found the facts so to be, then there was on the part of the plaintiffs a substantial compliance with the conditions of the policy. This instruction is in accordance with the principles above stated, and with the generally recognized doctrine that stipulations in a policy concerning the proofs of loss must be liberally construed in favor of the assured.

For the plaintiffs, an instruction was given on the hypothesis that the plaintiffs' agent was in sole possession of the property, and had it in his custody, with the legal conclusions resulting therefrom. An instruction was given for the defendant on the opposing hypothesis, that at the time of the fire one of the owners was on board the boat, and J. F. Hicks, the master, was not in custody of, or on board of said boat, and did not know the cause or origin of the fire. Counsel for defendant finds a glaring inconsistency in these two instructions. We do not perceive it. They would be inconsistent if the conclusions of law were the same in each supposed case. But the legal conclusions stated are as opposite as the hypotheses, and fairly present to the jury the consequences to follow respectively their adoption of either alternative theory of fact.

Other points raised upon the instructions given or refused are sufficiently covered by what has been already said. We find no error in the record. All the judges concurring, the judgment is affirmed.